CASE 15.—ACTION BY ERNEST MORAWICK AND OTHERS
FOR A SETTLEMENT OF THE ESTATE OF JULIUS
MARTINECK    DECEASED    IN    WHICH    ALVINA
MARTINECK BY HER GUARDIAN FILES ANSWER
AND SEEKS TO RECOVER CERTAIN BONDS.—
February 12.

# Morawick, &c. v. Martineck's Guardian, &c.

Appeal from Jefferson Circuit Court; (Chancery
Branch, First Division).

SKACKELFORD MILLER, Judge.

From the judgment plaintiffs appeal—Affirmed.

1. Jury—Right to Jury Trial—Legal Issues in Equitable Actions.
—Civ. Code Prac. section 10, provides that the defendant
may have an equitable action transferred to the ordinary
docket, if the answer presents a defense on which he is
entitled to a jury trial.    Section 11 declares that if there
is an issue which is not cognizable in chancery, and an
issue which is exclusively cognizable in chancery, the plain-
tiff may have the former issue tried before the latter is
disposed of, and section 12 provides that in an equitable
action either party may have the case transferred to the
ordinary docket for the trial of any issue concerning which
he is entitled to a jury trial.    Held, that a party to an
equitable action is entitled as of right to the trial of legal
issues therein by a jury.
2. Equity — Trial — Legal  Issues — Verdict of  Jury —Effect.—
Where a distinct legal issue on which a party to an equity
suit is entitled to a jury trial as of right is tried to a jury,
the verdict will be given the same force as in ordinary jury
trials, and will not be set aside, but will be regarded as
conclusive between the parties, unless the court is satisfied
that it is palpably against the evidence.
3. Same.—Where a chancellor in an equity suit submits an issue
to a jury in the exercise of discretion, the submission of
which is not a matter of right, the verdict is only advisory,

and not binding on the chancellor.

4. Appeal—Verdict in Equity Suit—Review.—Where a verdict
on a legal issue in an equity suit on which the parties were
entitled to a jury trial was sustained both by the common-
law judge who tried the issue and by the chancellor to
whom the verdict was certified, it will not be set aside on
appeal, unless substantial error to the prejudice of the de-
feated party was committed.

5. Same—Legal Issues—Trial.—Civ. Code Prac. section 552.
provides that depositions or certified copies may be used on
the trial of any issue of fact in an equitable action, unless
such issue be transferred pursuant to title 2, which author-
izes the trial by a jury of legal issues made in an equitable
action. Held that, where an issue of fact, in an equitable
action is submitted to a jury, the parties should be permitted
to introduce witnesses for oral examination before the jury,
if present, and should not be confined to the use of deposi-
tions.

6. Same—Harmless Error.—Where it did not appear that. appel-
lant could have made a stronger case by the introduction of
oral evidence, on the trial of a legal issue to a jury in an
equity suit, the court's error in restricting appellant to the
use of depositions was harmless.

7. Executors—Assets—Conversion—Evidence.—Where, in a pro-
ceeding to charge an executor with the value of certain
bonds, which it was claimed he had converted, the executor
denied any knowledge of testator's ownership of the bonds,
and it was proved that after testator had made his will, the
executor has advised him to invest $6,000 in such bonds and
place them in a safety deposit vault, and knew that testator
had purchased the bonds and was acquainted with their
value, and he had only attempted to account for between
$2,000 and $3,000 as the total value of the estate, evidence that
in the summer of 1904 testator, influenced largely by the
executor's advice, sold property owned by him, the value
of which was between $8,000 and $9,000, was admissible.

WILLIAM W. CRAWFORD for appellant.

JOHN B. BASKINS of counsel.

### CLASSIFICATIONS OF QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. The verdict of a jury on an issue out of chancery does

not have the force of a verdict of a properly instructed jury in a common law action, and where the chancellor merely follows the verdict, this court will reverse, unless the judgment is in accord with the preponderance of the testimony. (Leigh v. Citizens Saving Bank, 31 Ky. Law Rep., 252; Wisdom v. Nichols & Shepherd Co., 29 Ky. Law Rep., 1129; Keaton v. Sublett, 22 Ky. Law Rep., 631; McElwain v. Russell, 11 Ky. Law Rep., 649; Hill v. Phillips, 87 Ky., 169; Ford v. Ellis, 21 Ky. Law Rep., 1837; Reese v. Youtsey, 24 Ky. Law Rep., 603; Jones v. Wood, 24 Ky. Law Rep., 840.)

2. The verdict in this case resulted from incompetent and irrelevant testimony, which was prejudicial to appellant, and from the passion and prejudice, resulting from inflammatory speeches of appellee's counsel, and from improper sympathy in favor of the appellee, a little girl, who was daily paraded before the jury.

3. Where the issue is whether or not a particular act or crime has been committed, evidence tending to prove other acts or crime is inadmissible. (Cyc., vol. 17, 279; Greenleaf, vol. 1, sec. 2 (2); Will on Circumstantial Evidence, 339; Snapp v. Commonwealth, 82 Ky., 180; Commonwealth v. Abbott, 130 Mass., 472; Brown v. Schock, 77 Pa. St., 477; Gargill v. Commonwealth, 12 Ky. Law Rep., 149; Miller v. Commonwealth, 78 Ky., 16; L. & N. v. Berry, 88 Ky., 223.)

4. Where circumstantial evidence is resorted to, the circumstances must be proved and not themselves presumed from other circumstances. Therefore circumstantial evidence of collateral facts from which inferences of the existence of circumstances, needed in proof, may be drawn are inadmissible. Such evidence allows the jury to guess away the rights of litigants as was done in this case. (Wigmore on Evidence, sec. 43; Will on Circumstantial Evidence, 280; Encyclopedia of Evidence, vol. 3, 70; 16 Cyc., 1051; Underhill, sec. 225, p. 336-7; Us v. Ross, 92 U. S., 2811; Manning v. Mut. Life Ins. Co., 100 U. S., 693; Douglass v. Mitchell, 35 Pa. St., 445; Ruppert v. Brooklyn, etc., 47 N. E., 971; Cohn v. Seidel, 71 N. H., 558; Wald v. Louisville, Evansville, etc., 92 Ky., 645.)

5. Where the evidence is as consistent with non-liability as with liability, it should not go to the jury. The jury can not guess as to the existence of facts. (Lawson on Presumptive Evidence, 112; Kenton Co. Court v. Bank Lick, etc., 10 Bush, 536; Hughes v. Cincinnati, etc., 91 Ky., 526; Louisville & Nashville R. R. Co. v. McGary's Adm'r, 104 Ky., 509; Louisville Gas Co. v. Kaufman, etc., 105 Ky., 156; Hurt v. L. & N., 116 Ky., 553.)

6. A party can not be discredited by collateral acts or attempts

Morawick, &c. v. Martineck's Guardian, &c.

made to impeach his testimony on collateral acts brought out by his opponent, as was allowed in this case. (Civil Code, section 597; Commonwealth v. Welsh, 111 Ky., 545; Meaux v. Meaux, 81 Ky., 483; Kennedy v. Commonwealth, 14 Bush, 357; Crittenden v. Commonwealth, 83 Ky., 168.)

There was a failure of proof in this case, and it should not have been submitted to the jury. Therefore a judgment resting upon a verdict in such a case should be reversed. (Cyc., vol. 18, p. 1181; Worner on Amer. Law of Administration, p. 1188; In re Ryalls, 74 Hun., 205; Pulliam v. Pulliam, 10 Fed., 51.)

8. Appellees are bound to show that the decedent left five bonds in his safety deposit box, and that the bonds were obtained from there by apellant.

Two disinterested witnesses, whose characters are unimpeached and whose testimony is uncontradicted, and who were present when the box was opened, swear positively that the bonds were not in the box and that appellant did not get them.

It was error for the lower court to disregard this testimony, and it is conclusive of this case. (Testimony of Chas. Leathers, deposition, p. 25; Testimony of A. C. Smith, depostiion, p. 129; L. & N. v. Wathen, 22 Ky. Law Rep., 85; Second Nat'l Bank v. Donald, 48 N. W., 269; Day v. Boston, etc., R. R. Co., 52 Atl., 772. Cases distinguished: First Nat'l Bank v. Wisdom's Exor's, 111 Ky., 135; Fowle v. Child, 164 Mass., 211.)

McDERMOTT & RAY for appellees.
W. O. BRADLEY of counsel.

### POINTS AND AUTHORITIES.

1. On appellant's motion for new jury trial Judge Gordon reviewed trial and refused to set aside verdict. So did Chancellor Miller.

2. Statement of facts.

3. Weight to be given verdict—practically conclusive—because motion for new trial made before, and overruled by trial-judge and by Chancellor. (Lee v. Beatty, 8 Dana., 207; Moore's Heirs v. Sheppard, 2 Duv., 125; Hill v. Phillips, 87 Ky., 169; Ford v. Ellis, 21 Ky. Law Rep., 1837; Small v. Reeevs, 22 Rep., 1051; Talbott v. Bedford, 21 Ky. Law Rep., 897; McMakin v. Stratton, 82 Ky., 226; Wisdom v. Nichols, 97 S. W., 19; 11 Ency. Pl. & Pr., 705, 723, 728; Iowa 500, McDaniel v. Marigold, 65 Am. Dec, 726; O'Brien v. O'Brien, 53 Am. Dec., 128, 13 Mo. 16; Southern Ry. Co. v. McGeoughey, 102 S. W., 270; Southern Ry. Co. v. Smith, 102 S. W., 232, 16 Cyc., 425; Walling v. Eggers, 104 S. W. P.)

4. Wide latitude allowed in circumstantial evidence. (McKelvie

on Evidence, pages 2, 62; Lehmer v. Herr, 1 Duv., 360; Ward v. Crutcher, 2 Bush, 87; Wills on Circumstantial Evidence, 46: 6 Encyc. of Evidence, 19; Best on Evidence, star page 402 (Ed. 1875); 3 Ency. of Evidence, 109, 113, 115; Chapize v. Bane, 1 Bibb, 612; Davis v. Curry, 2 Bibb, 238; Moore's Heirs v. Shepherd, 2 Duv., 125; James v. Hayden's Admr., 10 Ky. Law Rep.. 534; Southern Ry. Co. v. McGoughey, 102 S. W., 270; First National Bank v. Wisdom, 23 Rep., 530; Greenleaf on Evidence, as to "inferences" (Wigmore 16 Ed.), 14.)

5. Competent to show appellant's attempted fraud in Hotel-deal. (First National Bank v. Wisdom's Exrs., 23 Rep., 530; Fowle v. Child, 164 Mass., 210; Stephens on Evidence, 7th and 9th article; Elliott on Evidence, vol. 1, sec. 156; Butler v. Watkins, 13 Wallace, 456; Boyd v. Boyd, 164 New York 234, Provident S. L. A. So. v. Whayne 93 S. W., 1054, 17 Cyc., 485; H. B. Clafling v. Rodeburg, 101 Ala., 213.)

6. Evidence competent as to deposit slip that disappeared. (Taylor on Evidence (Am. Ed. 1887), 107, 116; Greenleaf on Evidence (Wigmore 16 Ed.), 37, 132.)

7. Evidence sufficient to sustain verdict: Dr. Moraweck wholly untrustworthy as a witness; Julius Martineck had the bonds at his death; according to apellant's own evidence, $2,244 was stolen; coupons collected April, 1905, and never since; Dr. Moraweck got the bonds; his falsehood to Judge Gregory as to amount of estate; he falsely denies knowledge of the bonds; he falsely denies knowledge of the will; suspicious finding of the will; going through the box at the Vault Company; disappearance of incriminating deposit slip; he denies seeing the slip of April 7, 1905, but it was found in the slips of July, 1906, the date of his handling slips at the Fidelity; he did not deposit cash nor a check for $100.00 on April 7, 1905, hence he must have deposited coupons; Fac-simile of deposit-slip; Eberlein's entry in book by his order untrustworthy; appellant would not swear that $100 was proceeds of sale of horse; Deposit slip April 7th never given to Teller Chenowith; hence he could not write "coupons" on it.

8. Cross-appeal. (Aetna Ins. Co. v. Johnson, 11 Bush, 587; Elliott on Evidence, 2122, 2130, 2133, 2136.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On February 17, 1905, Julius Martineck died estate in Jefferson county. He nominated the appellant

Morawick as executor of his will, and in this action, brought by the executor to settle the estate, the only child of Julius Martineck by her guardian filed an answer and counterclaims, in which she charged that the testator at the time of his death owned five Louisville & Nashville Railroad bonds known as "L. & N. collateral trust," each of the par value of $1,000, and worth that sum at the time of the testator's death. She averred that the executor had failed to charge himself with or account for any of these bonds, and had wrongfully converted them to his own use; and sought to hold him liable for the amount of them. The executor answered, denying that these bonds or any of them had come into his possession, or that he had any knowledge or information that the testator at the time of his death owned them. Upon the issue thus presented; on motion of the guardian of the infant, an issue out of chancery was directed upon this point, and the chancellor transfered the case to the law division of the Jefferson circuit court presided over by Judge Gordon, where upon a trial before a jury a verdict was returned against appellant.

No complaint is made of the instructions, which simply directed the jury to find the fact in controversy, but it is earnestly insisted that the verdict is wholly unsupported by the evidence, and that other errors that will be noticed in the course of the opinion were committed by Judge Gordon to the prejudice of appellant. For appellee it is contended that the verdict of the jury is to be treated as would be the verdict of a properly instructed jury in a common-law action, and will not be disturbed unless it is flagrantly against the evidence. For appellant it is insisted that an issue of fact was merely submitted

to the jury by the chancellor to get the aid of their opinion in its disposition, and that their finding does not have the effect of a verdict in a common-law action, but is only advisory, and the chancellor may or not in his discretion, after considering for himself the case, feel bound by it; that, without regard to the verdict he had the right to exercise his independent judgment and dispose of the case as he thought proper. It is very difficult to draw distinctly the line between that class of cases in which a party to an action properly brought and pending on the equity side of the docket is entitled as a matter of right to demand that the controverted issues of fact shall be submitted to a jury and that class of cases in which it is wholly within the discretion of the chancellor whether he will or not call to his assistance the aid of a jury; and, as it is not necessary in disposing of the matter before us to make the classification, we will not attempt it further than to say that in this action the defendant, now appellee, was entitled to demand a jury trial on the issue presented by the answer and counterclaim. The only matter in controversy between the parties was whether or not appellant had wrongfully converted to his own use specific personal property to which appellee was entitled. This was purely a legal issue. The action, if one had been brought to recover this property, would properly belong on the ordinary or common-law side of the docket. The fact that the cause of action was asserted in a counterclaim in an equitable action did not deprive appellee of his right to a jury trial. At common-law the action would have been in trover. Chitty's Pleading, p. 164. It has none of the elements of an equitable proceeding, and it would have been error not to have granted appellee's re-

quest for a jury trial. Our Code of Practice recog-
nizes the right to have legal issues in equitable actions
disposed of by a jury. Section 10 of the Civil Code
of Practice, provides in part that "the defendant
by motion made when he answers may have an
equitable action transferred to the ordinary docket
* * * if the answer presents a defense of which he
is entitled to a jury trial." Section 11: "If there
be an issue which was not cognizable in chancery,
and an issue which was exclusively cognizable in
chancery * * * the plaintiff may have the former
issue tried before the latter is disposed of." Section
12: "In an equitable action, properly commenced, as
such, either party may, by motion, have the case
transferred to the ordinary docket for the trial of any
issue concerning which he is entitled to a jury trial;
but either party may require every equitable issue
to be disposed of before such transfer." It will be
observed that the Code does not declare what weight
shall be attached to the verdict of the jury if an issue
out of chancery or a distinct legal issue in an equitable
action is submitted for their decision, but it has been
ruled by this court that: "In a case of purely
equitable cognizance, the chancellor has the discre-
tionary power to direct an issue of fact to be tried
by a jury; and their verdict is, generally speaking,
treated by the chancellor as conclusive between the
parties, but it is not necessarily conclusive, for the
reason that the chancellor simply seeks the advice of
the jury to aid him in coming to a correct conclusion
on a mooted question of fact. But this principle does
not apply where there is a distinct legal issue made
in an equitable action; for the reason that the twelfth
section of the Code gives either party the right to
have such issue tried by a jury, and their verdict, as

in ordinary jury trials, is conclusive between the parties, unless the court, upon a motion for a new trial, is satisfied that it is palpably against the weight of evidence.'' Hill v. Phillips, 87 Ky. 169, 7 S. W. 917, 10 Ky. Law Rep. 31.

This general statement of the weight that will be attached to the verdict of a jury when an issue out of chancery on a distinct legal issue in an equitable action is submitted for their consideration, although it does not undertake to classify the cases in which a party is entitled to a jury trial as a matter of right from those in which the chancellor may or not in his discretion seek the advice of the jury, has been generally followed in the practice, and it may be accepted as the rule that will be applied by this court when questions of this character arise; and it may also be considered as settled that when the chancellor in the exercise of his discretion submits an issue to a jury, the submission of which a party cannot demand as a matter of right, that the verdict is not binding upon the chancellor. We do not mean to say that the verdict of a jury in any case is binding upon the chancellor or the court, as the court in any case tried before it has the power to set aside the verdict, although in unmistakably common-law actions, or in respect to a distinctly legal issue submitted in an equitable action, the court might be more reluctant to disturb the finding of a jury than would the chancellor if the jury merely considered an issue of fact submitted to them by him in an equitable action. As illustrative of the practice, and supporting the rule announced in Hill v. Phillips, we do not deem it necessary to do more than cite the cases of Wisdom v. Nichols-Shepherd Co., 97 S. W. 18, 29 Ky. Law Rep. 1128; McElwain v. Russell, 12 S. W. 777, 11

Ky. Law Rep. 649; Ford v. Ellis, 56 S. W. 512, 21
Ky. Law Rep. 1837; Reese v. Youtsey, 113 Ky. 839,
24 Ky. Law Rep. 603, 69 S. W. 708; Jones v. Woods,
70 S. W. 45, 24 Ky. Law Rep. 840; Bush v. Eastern
Kentucky Timber & Lumber Co., 90 S. W. 547, 28
Ky. Law Rep. 773; Baxter v. Knox, 31 S. W. 284,
17 Ky. Law Rep. 489. Under our view of the law
and practice applicable to this case and controlled
by the rule so uniformly applied by the court in
considering the verdict of a properly instructed jury
in a common-law action, we could not set aside the
verdict unless it was flagrantly against the evidence;
but, if we should accept the views of counsel for ap-
pellant and treating this case as if the issue referred
to the jury was one that the chancellor might in his
discretion have disposed of without a reference, the
question would remain: What weight shall be at-
tached to the finding of the jury? That the judgment
of 12 unbiased jurors upon a controverted question
of fact is entitled to great consideration goes without
saying; and although the chancellor might disregard
their finding, he would not do so lightly, or unless
fully satisfied that injustice had been done. This
thought is well stated in Lee v. Beatty, 8 Dana, 204,
where the court said: "If, however, the judge shall,
after a finding by the jury impaneled in such a case,
and for such a purpose, be well satisfied that the
facts did not authorize the verdict, or preponderated
decidedly against it, he would have the unquestion-
able right to disregard the finding by the jury, and
render such a decree as he should have done in the
first instance, without the aid of an inquisition. But
if, as we should presume would generally be the case
when a jury has been properly ordered, the judge
should after the finding, as before, consider the facts

as being equiponderant or very nearly so, he should not disregard the verdict, but should render such a decree as would be proper in a case tried by a jury in a court of law. The verdict should be entitled to some influence, and should at least be respected as the opinion of 12 intelligent and impartial men upon doubtful facts which they were peculiarly qualified to determine, and were therefore summoned to determine.'' In 2 Encyclopedia of Pleading & Practice, p. 705, the practice supported by ample authority is thus stated: ''Though the verdict of a jury is not binding on the court, yet it is entitled to much weight and respect, and will ordinarily be adopted as the basis of its final decision if the court is satisfied that at the trial justice has upon the whole been substantially done.'' In 16 Cyc. 423-425, it is said: ''In a chancery case, where the right to a jury trial is not expressly given by statute, the verdict of the jury on issues submitted to them is in most jurisdictions merely advisory, and not binding upon the chancery court. * * * Nevertheless, where the issues have been properly submitted to the jury, and they are material, if the trial appears to have been a fair one, and the parties have introduced all their evidence on the issues, the verdict of the jury is entitled to much weight, and ought not to be lightly disregarded. * * * The chancery court will rarely set aside a verdict when the judge before whom the issue is tried certifies that he is satisfied with the verdict, and that it ought to be regarded as conclusive on the question submitted to the jury.'' Judge Gordon, before whom the case was tried, in overruling the motion for a new trial, said: ''Nothing short of a direct or controlling authority from the Court of Appeals could require me to certify to the chancellor a verdict which

in my opinion was returned without a scintilla of evidence to support it, or was flagrantly against the weight of the evidence, or was rendered upon in-competent evidence. I am of the opinion that the verdict is not flagrantly against the weight of the evidence.'' The chancellor to whom the matter was referred after the trial of the issue also declined to disturb the verdict. So that the appellant is in the position of asking this court to set aside the verdict of a jury upon a controverted question of fact when that verdict has been approved by the common-law judge who tried the case, as well as the chancellor who finally disposed of it. This we do not feel dis-posed to do, unless the contention of appellant that substantial error to his prejudice was committed in the trial of the issue before Judge Gordon is sus-tained. Entertaining this view, it will not be neces-sary to state elaborately the evidence or to express an opinion concerning its weight, other than to say that in our opinion from an independent considera-tion of the record it is sufficient to sustain the verdict. We will therefore proceed to consider the particular errors relied on, viz., that the court erred in refusing to permit some witnesses who were present to testify orally in place of permitting their depositions that had been previously taken to be read; and, second, in admitting incompetent evidence.

Before the case was transferred to the common-law court, the depositions of the appellant, as well as a number of other witnesses, had been taken. During the progress of the trial the appellee, who was de-fendant below, offered to read in evidence the deposi-tion of appellant, thereupon counsel for appellant objected to the deposition being read and offered appellant as a witness to testify orally in the case.

His objection was overruled, and the deposition read. The same action was taken in respect to the evidence of Anna Rose Cooney and Eugene Cooney, whose depositions were read as evidence in behalf of appellee. Setting aside for the present the question as to whether this ruling of the court was prejudicial to appellant, we will consider what is the proper practice in matters of this kind. Section 552 of the Civil Code of Practice provides: "Depositions, or certified copies thereof if they be lost, may be used upon the trial of any issue of fact in an equitable action, unless such issue be transferred pursuant to title two." Under title two are the sections heretofore quoted, authorizing the trial by a jury of legal issues made in an equitable action. Giving to this section of the Code its fair meaning, our opinion is that, where an issue of fact in an equitable action is submitted to a jury, the proper practice is to allow the parties to introduce witnesses in support of their respective contentions for oral examination before the jury, if the witnesses are present and they are offered in person to testify. There appears to be no good reason why the jury should not hear the witnesses testify orally in this class of cases, as well as in the ordinary common-law actions. Indeed, the same reasons exist why the jury should hear the witness testify in person as exists in any other jury trial. These reasons have been so often presented and are so well known to the profession that it is not necessary here to mention them. In Talbott v. Bedford, 53 S. W. 294, 21 Ky. Law Rep. 898, which was a suit in equity that had been prepared for trial before the chancellor, the court upon the trial before a jury only allowed two witnesses on a side to testify orally; the other evidence being heard by deposition. This court, without

passing directly upon the question here presented, contented itself by saying that, "in allowing two witnesses to testify orally and requiring all the other proof to be made by depositions, we are unable to say that any injustice was done either party."

In Small v. Reeves, 59 S. W. 752, 22 Ky. Law Rep. 1051, the evidence had been taken almost entirely by deposition, and the lower court in submitting the issue to the jury, prescribed that the plaintiff's depostitions theretofore taken should constitute his evidence in chief on the trial, with the exception that the plaintiff might be examined orally before the jury, and that the plaintiff might introduce oral evidence in rebuttal, and that the defendants should be confined in the introduction of their evidence to the depositions theretofore taken in their behalf, except that they might introduce testimony in rebuttal. The plaintiff excepted to so much of the order as limited the introduction of oral testimony, and this alleged error on the part of the circuit judge was the chief error relied on for reversal. In disposing of it, this court said: "This suit was brought in equity and an immense amount of evidence was taken by deposition before there was any motion for a jury trial. It is prosecuted by appellant in forma pauperis, and upon the return of the case after the reversal by this court, it was not an abuse of discretion on the part of the circuit judge to require appellants to read to the jury the depositions which had been taken at a great expense, as testimony in the case. The right of the circuit judge to so regulate the form of the evidence and the order of its introduction is we think abundantly sustained by the cases [citing them]. Besides, it is not apparent that appellant was prejudiced by the refusal of the court to permit the oral examina-

tion of the one witness besides himself who offered to
testify.    There was no avowal as to what this wit-
ness would prove, and his deposition, taken at great
length, was read to the jury, and the plaintiff thus
got full benefit of his testimony."    In McMakin v.
Stratton, 82 Ky. 226, 8 Ky. Law Rep. 766, in dis-
cussing a similar question, the court said: "The
question was submitted to the jury on that issue, as
directed by the chancellor, and, when tried, the judg-
ment was for the appellee.    Oral testimony was heard
on the trial, and the objection that it should have
gone to the jury in the form of a deposition is una-
vailing.    The ancient chancery practice permitted the
introduction of this character of testimony—at least
such has been the practice is this State. * * * Sub-
section 2 of section 552, when treating on the issues
of fact in equitable actions, provides that the court
may require oral testimony upon a trial by jury."
These are the only cases that have come under our
notice that have been decided under the present Code.
Code 1854, section 613, provided: "Depositions may
be used on the trial of all issues and upon all motions
in actions by equitable proceedings except where the
court otherwise directs on an issue tried by a jury."
The difference between that section and section 552
of the present Code is apparent.    Under the old Code
the practice was to use depositions entirely, unless
otherwise directed by the court.    Under this Code
depositions are to be used, unless the issue is trans-
ferred to a jury for hearing.    There is an apparent
conflict between the cases cited construing section
552, but the proper practice is to allow the parties to
introduce oral evidence, and, if it should appear that
the failure to allow this to be done had worked sub-
stantial prejudice to the rights of the party making

the offer, it would constitute reversible error. The record does not disclose what advantage or benefit appellant could have derived from being allowed to testify orally—in fact, he did so testify in rebuttal—and it does not appear that he could have made out for himself in any respect a stronger or better case than he did in his deposition, and we are unable to perceive in what manner his rights were prejudiced by the failure of the lower court to permit him to testify orally, nor do we discover anything in the record that would lead us to the conclusion that his rights were affected by the refusal of the lower court to permit Mrs. Cooney and Eugene Cooney to testify in person.

It is earnestly contended that serious error was committed in allowing evidence touching the efforts of appellant to sell the decedent property located at Tell City, Ind. To understand the pertinency of this evidence, a brief summary of a few of the salient facts and circumstances developed in the case will be necessary. In the summer of 1904 Martineck, influenced largely by the advice of appellant, sold property owned by him in Louisville and in which he conducted a saloon. The proceeds of this property, together with other estate owned by Martineck, amounted to between $8,000 and $9,000. After making his will, and disposing of this property, Martineck by the advice of appellant invested $6,000 in Louisville & Nashville bonds, and placed these bonds in a safety vault in the National Bank of Louisville; but he afterwards disposed of one of them. That appellant knew Martineck had purchased these bonds, and was also fully acquainted with the value of his estate, the evidence leaves no room to doubt. He further knew that Martineck was an unusually close,

economical, thrifty man, and that, as he had the bonds
a few months before his death, it was reasonably
certain that he had them when he died.   But, when
he qualified as executor under the will, a few days
after the death of Martineck, and went before the
county judge for the purpose of probating it, he
informed the judge that his estate amounted to be-
tween $2,000 and $3,000, which was approximately
the correct value of it excluding the bonds.   Nor did
appellant at any time manifest the slightest interest
or concern about these bonds, or express any opinion
or surprise that they could not be found, or concern-
ing the smallness of the testator's estate, although
it would seem to have been his duty, in view of the
fact that he knew a few months before the testator
died that he had these bonds, to have taken some
interest or at least manifested some curiosity as to
what had become of them, but he did neither.   On
the contrary, he ignored their existence entirely, and
proceeded to settle the estate as if Martineck had
never owned any bonds of their equivalent.   When
the guardian of the infant undertook to charge ap-
pellant with the value of these bonds, it was, of course,
indispensable that it should be shown that Marti-
neck had the bonds, and that appellant knew it or at
least knew that he had money or its equivalent
amounting to between $8,000 and $9,000.   In the
development of these two facts so necessary to a
recovery, appellees were permitted to prove that a
few weeks preceding the death of Martineck appel-
lant made a strenuous effort to sell him property in
Tell City, Ind., for $8,000 or $9,000.   This evidence
in connection with the other facts in the case was
competent for the purpose of establishing that at
this time appellant knew that Martineck was worth

between $8,000 and $9,000. In the admission of this competent evidence, for the purpose mentioned and in connection with it, there was some incompetent evidence permitted to go before the jury; but this technically inadmissible evidence was so intimately connected with that which was competent that it was difficult to separate with precision the wheat from the chaff, and to draw with accuracy the line between that which was competent and relevant and that which was not. Whatever of the evidence upon this point that was not competent cannot be said to have been prejudicial, in view of the fact that it merely brought out more strongly appellant's knowledge of the value of Martineck's estate.

The evidence in this case is wholly circumstantial. There is no direct evidence connecting appellant with the conversion of these bonds, and yet there are many circumstances, each in itself inconclusive, that, when added together, leave the impression that the verdict of the jury finding that he converted them was not without sufficient evidence to sustain it. In the trial of cases of this character greater latitude must necessarily be allowed in the examination of witnesses than when the facts are susceptible of direct or positive proof. When it is sought to make out a meritorious case by circumstantial evidence to the end that justice may be done and the rights of innocent people protected, the trial judge may, with great propriety, admit to the jury every relevant circumstance that tends to throw light upon the situation, and may with equal propriety allow the examination of witnesses to take a range sufficient to embrace within its reach every pertinent circumstance that will aid the jury in arriving at a just conclusion.

In view of the fact that able counsel on both sides

of this case have manifested great ability and industry in bringing to our attention every important feature of it, and because in its various aspects it is full of interest, we have given to it a most careful consideration, and our conclusion is that the verdict of the jury, although rested upon circumstantial evidence, is correct.

We are asked by appellee to review the judgment of the chancellor allowing appellant commissions and only charging him with 4 per cent. interest upon her money, but we are not inclined to grant this request.

Wherefore the judgment is affirmed on the original and cross-appeals.

Petition for rehearing by appellant overruled.