## Allen v. Rogers.
### (Decided Feb. 18, 1936.)

MARCUS C. REDWINE for appellant.

J. SMITH HAYS, Jr., for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Maria Rogers executed a deed on March 10, 1932, to W. H. Allen, conveying to him all of her interest in certain real estate in Winchester, Ky., which she had inherited from her daughter, Maggie Rogers Allen, who died intestate on February 26, 1932. In the deed she also released her interest in the personal property belonging to the estate of her deceased daughter. On March 24, 1932, this action was brought against W. H. Allen, individually and as administrator of the estate of Maggie Allen, deceased, by Maria Rogers, by her next friend, Hettie Rogers, to set aside the deed of March 10. 1932, on the ground of mental incapacity and undue influence. James Rogers and Hettie Rogers, her only children, were also named plaintiffs.

Maria Rogers died May 4, 1932, and the action was revived in the name of Hettie Rogers and James Rogers. Hettie Rogers died December 31, 1933, before any proof was taken, and the action was revived in the name of James Rogers. The case was submitted at the September, 1935, term of the Clark circuit court, and the chancellor set aside the deed on the ground that Maria Rogers, at the time it was executed, was without sufficient mental capacity to understand the nature of the transaction. W. H. Allen has appealed.

There was no evidence tending to show that any undue influence was exerted on the deceased to obtain the deed, and the only issue presented by the evidence relates to her competency to make the deed. The sole question involved is one of fact. The evidence on the issue of her mental capacity at the time the deed was executed is somewhat conflicting, but a careful examination of the record convinces us that the preponderance of the evidence supports appellant's claim that Maria Rogers had sufficient mental capacity to understand the nature of the transaction. She was 84 years of age when she died, and had been afflicted with cancer for about a year.

James Rogers testified in his own behalf, in regard to his mother's physical and mental condition, and he related a few facts and circumstances which indicated that she was forgetful and that her mind at times was not clear. He expressed the opinion that his mother was not competent to transact business at the time the deed was executed. No exceptions to his deposition

were filed. Dr. O. P. Clark treated Maria Rogers from September 5, 1931, until January 5, 1932. He only saw her when she visited his office for treatment, and her last visit was made January 5, 1932. He testified that she was in a very weak and run-down condition, and that her mental condition was not very good. When asked if she had sufficient mind to transact any business during the period from November, 1931, to January 5, 1932, he answered: "I wouldn't think so." Dr. H. R. Henry treated Maria Rogers from August 31, 1931, until her death. During this time he saw her fifteen or twenty times. He was asked if Maria Rogers, subsequent to December, 1931, was mentally capable of understanding business affairs and transacting business, and he answered: "I don't believe she was, anything that involved very much detail or very complicated. I should say not." These were the only witnesses introduced by the plaintiff.

Mr. and Mrs. David Prewitt, prominent white citizens of Clark County, had known the deceased many years, and during the last year of her life saw her and talked with her frequently. Her daughter, Hettie Rogers, was their laundress, and they delivered and called for their laundry at the home of the deceased each week. They were interested in her and her affairs, and frequently went in the house to see her after she was confined to her bed. Mr. Prewitt was asked about her mental condition on or about March 10, 1931. and he said:

"I saw her even after she took to her bed, and probably within two weeks of the time of her death. I would go in when there and she was in bed, and talk to her a little, and I could see no change from the time I saw her before, and I considered her above the average in mentality and certainly above the average in character. * * * I saw her once a week or once every two weeks,—as often as once every two weeks during that time, and I would have considered her perfectly competent to understand anything she could have understood in her life. I talked with her two or three weeks before she died, and when she was suffering. She seemed to be just as much at herself as she had ever been."

Mrs. Prewitt testified that she saw the deceased

two or three times a week from February, 1931, until her death, and several times a day during the last week before she died. Her mind remained clear until a short time before her death. E. O. Givens, Hattie Brooks, Hallie Tribble, and Amanda Taylor, neighbors of Maria Rogers, who had known her for many years, testified that they saw her almost daily, and that her mind was clear until shortly before her death.

The deed in question was executed in an attorney's office in Winchester. Maria Rogers was driven to the office by Chester Coleraine, and was accompanied by her daughter, Hettie Rogers, who was present when the deed was executed. On the same occasion she executed a will which was witnessed by Coleraine and W. H. Allen. Both Coleraine and the attorney who drew the deed and will testified that she apparently understood the nature of the transactions. The record discloses that the property which Maria Rogers inherited from her daughter, and which was conveyed to appellant, by the deed in question, was acquired by Maggie Allen in the following manner:

W. H. Allen purchased a lot in 1893, on which he built a house. He and Maggie Rogers were married in 1894, and in 1925 they conveyed the house and lot to a third party, who immediately conveyed it to Maggie Allen. In 1926, W. H. Allen purchased an undivided interest in certain real estate located in Winchester, for which he paid $500. The property was deeded to his wife, Maggie Allen. The property in which Maria Rogers and her son and daughter lived was owned by her husband, Elijah Rogers, at the time of his death. He had been dead nearly fifty years. After his death, his widow and children continued to live in the house. At the same time the deed here in question was executed, W. H. Allen executed a deed to Maria Rogers conveying to her whatever interest he acquired through his wife in the Elijah Rogers property, in which Maggie Allen owned a one-third interest subject to the dower rights of her mother. Maria Rogers was fond of her son-in-law, W. H. Allen, who had been a good husband to her daughter, and she promptly and willingly relinquished to him the interest she had acquired through her daughter in the property which appellant had purchased with his own money.

A deed should not be set aside on the ground of mental incapacity of the grantor, except on strong and convincing evidence. Maddox v. Maddox, 258 Ky. 121, 79 S. W. (2d) 402; Combs v. Bowen, 255 Ky. 802, 75 S. W. (2d) 513; Tunks v. Vincent, 241 Ky. 379, 44 S. W. (2d) 282; Schenk v. Schenk, 240 Ky. 237, 41 S. W. (2d) 1102; Dixon v. Dixon, 236 Ky. 608, 33 S. W. (2d) 611.

The evidence for the appellant shows that Maria Rogers was intelligent and strong-willed, and that her mental faculties were unimpaired until shortly before her death, though she was aged and infirm. On the other hand, the evidence introduced by appellee for the purpose of showing mental incapacity falls far short of being convincing. The chancellor's finding will not be disturbed when it is based upon conflicting evdence and the mind is left in doubt as to the truth, but, when the preponderance of the evidence is against his finding, it becomes the duty of his court to enter a judgment accordingly.

After carefully considering all the evidence, we conclude that the chancellor erred in cancelling the deed.

Judgment is reversed, with directions to enter a judgment in accordance with this opinion.