# McDonald's Ex'r v. Transylvania University, Lexington.

(Decided Oct. 8, 1937.)

(As Modified on Denial of Rehearing June 10, 1938).

BENTON & DAVIS for appellant.

M. C. REDWINE and FRANK McCARTHY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Jasper McDonald, widower, a resident of Clark county, died October 10, 1934, at the age of eighty-seven. Thereafter suit was filed for a settlement of the estate. On February 8, 1924, Mr. McDonald executed to appellee the paper copied below, which was unpaid at the time of the suit:

"For and in consideration of other pledges being made in the campaign now in progress for Transylvania University * * * I hereby promise to pay to said University the sum of Twenty-five Hundred Dollars for the purpose of founding the Jasper McDonald perpetual scholarship. This pledge is to be paid at my death. Should I make any payments on it before that time, I am to receive annuity bond for same. Annuity bonds to be issued to my wife should she survive me."

In the petition the executor asserted that the writing was null and void, because of lack of consideration; that same was executed under undue influence, and the maker's mental condition at the time of its execution was such that he did not realize its import and effect. Appellee had been notified of such conclusion by the executor, who suggested the filing of a suit by appellee so that the matter might be tested. The invitation was not accepted, so in the settlement suit appellee was made a defendant, and called upon to assert its claim. In this suit the representative sought to have the note cancelled on the grounds above stated.

Appellee filed answer and counterclaim, which was a denial in general, specifically denying the allegations

of undue influence and lack of mental capacity, and by counterclaim alleging such facts as would, under Code provisions, constitute a cause against the estate. This pleading was controverted of record. The parties stipulated that the only issue to be determined under the pleadings was whether or not testator was mentally competent, or whether execution was procured by undue influence.

Prior to the entry of the stipulation, appellant moved the court for an issue out of chancery, which motion the court sustained without objection by appellee, and a jury was empanelled and proof heard. The court instructed the jury, in substance, that they should find for Transylvania unless they believed from the evidence that at the time of the execution of the paper in question Mr. McDonald did not have sufficient mental capacity to understand his rights, the character and nature of the transaction. After consideration, the jury returned this verdict: "We, the jury, find for plaintiff," whereupon appellee moved the court for judgment notwithstanding the verdict. The court sustained the motion and entered an order reciting that the submission of the issue had been directed merely for advice, and the court thus treating the verdict and "considering the pleadings and proof, verdict of the jury and argument of counsel," held that deceased was mentally competent at the time the paper was executed, and accordingly entered judgment for Transylvania. To this order the executor objected and excepted, and was granted an appeal.

It is urged by appellant that the chancellor erred in holding the jury's verdict as advisory only, since the issue was purely of legal character, it being argued that the verdict of a jury upon an issue of fact should be treated as a verdict in any ordinary action, conclusive between the parties, if it be not palpably against the evidence. As a basis for the argument that the question was purely legal, it is urged that the contract was in its nature executory, the idea being, if the assertion is true, that in order to defeat it there would not be required that quality of proof necessary where the contract is an executed one, the latter being of a more solemn nature. It is further contended by appellant that the preponderance of evidence was such that the court should have lent full effect to the verdict, or, having erroneously

treated it as advisory, the proof measured up to a standard authorizing the chancellor to conclude that Mr. McDonald was incompetent.

Appellee argues that the verdict of a jury in an equitable action is to be treated as advisory only, hence might be, and was appropriately disregarded by the chancellor. That a suit to cancel an instrument on the grounds alleged is purely equitable; that the instrument constituted an executed contract, hence the proof necessary to annul the obligation must be convincing, and that the proof did not measure up to the requisites. Respectable authorities have been cited by the parties, tending to sustain their respective views.

That the document constituted an executed contract, there can be little doubt, though it may not be placed in the same class as a will, or a deed, and may not be said to be enveloped with the same dignity or solemnity as such instruments. That the issue presented was an equitable one, finds convincing support in James v. Cullins, 214 Ky. 179, 282 S. W. 1106; Morawick v. Martineck's Guardian, 128 Ky. 155, 107 S. W. 759, 32 Ky. Law Rep. 971; Consolidation Coal Company v. Vanover, 166 Ky. 172, 179 S. W. 43; Winchester v. Watson, 169 Ky. 213, 183 S. W. 483; Barnes v. Johnson, 111 S. W. 372, 33 Ky. Law Rep. 803; Louisville & N. Railroad Company v. Tuttle, 180 Ky. 558, 203 S. W. 308; Hendrix v. Money, 1 Bush 306; Blakey v. Johnson, 13 Bush 197, 200, 26 Am. Rep. 254; McElwain v. Russell, 12 S. W. 777, 11 Ky. Law Rep. 649; Sellers v. Sellers, 162 Ky. 9, 171 S. W. 449.

The argument advanced by the parties goes after all only to the rule to be applied, in our consideration, and weight to be given the proof, and by which we must determine whether or not the chancellor correctly ruled. We leave out of consideration references made to the matter of undue influence, which issue we think was properly eliminated from the jury's consideration.

We are aware of the rules pertaining to our duty in regard to the finding of the chancellor on factual questions; we must give it more than ordinary consideration; particularly is this so in the class of cases cited by appellees and others. Tunks v. Vincent, 241 Ky. 379, 44 S. W. (2d) 282; Perkins v. Perkins, 241 Ky. 695, 44 S. W. (2d) 1073; Reiss v. Wintersmith, 241 Ky. 470,

44 S. W. (2d) 609, but in no case have we held that the chancellor's conclusion is binding.

We may review the evidence giving the chancellor's view the deserved weight, yet if we determine that the conclusion is against the weight we may reach a different conclusion. Red Bird Oil Company v. Susnick, 235 Ky. 161, 30 S. W. (2d) 875; Colwell v. Holliday, 250 Ky. 584, 63 S. W. (2d) 776; Home Lumber Company v. Smith, 251 Ky. 845, 66 S. W. (2d) 83; Allen v. Rogers, 262 Ky. 744, 91 S. W. (2d) 17; Sellers v. Sellers, 162 Ky. 9, 171 S. W. 449.

As to the mental incapacity of Mr. McDonald, nine or ten witnesses testified, covering the period of time from before the date of the execution of the paper and later. One witness had lived in the same house with him for about seven years and had known him for twenty years or more. She described his condition, particularly from 1927, as being feeble; his memory bad; he had little recollection of ordinary happenings. Mr. Kennedy, a tenant of testator, testified that he had seen Mr. McDonald almost every week; had known him for thirty years, and that his memory in 1924 and 1925 was not good. More than once he had forgotten that witness had paid him his rent. Another witness had known him rather intimately for more than eight years; he could not take care of his papers, and she had to look after them; she thought him competent at times, but at other times he was incapable of attending to business matters.

Another witness, who attended him in 1926 and 1927, testified that he was frail and had to be assisted in dressing; that he was not equal to transacting any business. Two others, who had lived in the same house with him from 1924 to 1928, said that he was very feeble in 1924, one saw him at table three times a day; he was forgetful and absent-minded. The personal representative, nominal plaintiff in the suit, had known deceased for forty years and saw him frequently. He acted as attorney in the winding up of Mrs. McDonald's estate and thereafter was the adviser of Mr. McDonald. He details many circumstances and transactions which are persuasive in leading to the conclusion that the attorney was correct in saying that since 1927 he had been Mr. McDonald's "unofficial committee."

In 1925 Mr. McDonald and his wife had conveyed to the appellee their home and 50 acres of land out in

the county. This deed was not to be recorded, without Mrs. McDonald's consent, until after her death. After her death in 1927 the deed was presented, and although Mr. McDonald had signed it, he insisted that he had not; the transaction had passed from his mind, and he was greatly worried, and the personal representative repurchased the property for $5,000 in order to prevent embarrassing litigation.

In 1928 deceased purchased a farm from his sisters. They owed a bank about $7,000, Mr. McDonald being surety. He raised sufficient money to pay off this debt by pledging his home and the 50 acre tract. A lien was retained on the land to secure the amount of the unpaid balance, about $10,000, for which Mr. McDonald was obligated. Later, Mr. McDonald continuously insisted that he was not indebted to his sisters, but that they were indebted to him on account of the $7,000 paid the bank. His attorney was not able to make him see the true status of the transaction. He then wanted to give the land to a relative, but was convinced only after a long time that he could not make title until the lien was discharged, which he finally undertook to do by giving a check to a bank for about $7,000, when he had less than $100 to his credit. Witness described Mr. McDonald as being in feeble health; he sometimes fell on the street. He was never a mentally strong man. He had an exaggerated idea of the extent of the property owned by him; on the date the paper was executed his only property was a half interest in a tract of 131 acres, which later sold for $7,200.

Three physicians testified. Dr. Cole had known deceased for as long as twenty years. He had treated him in 1925 and since; saw him frequently during three or four years before his death. He considered him a feeble man. The doctor expressed the opinion that McDonald was not competent to transact business from the time he treated him in 1925. Dr. Ishmael had known the deceased for thirty years; had waited on him professionally at times since 1912; was positive that in February 1924 McDonald was mentally incompetent to such an extent that he could not carry out business transactions affecting his estate. He emphasizes his conclusion on cross-examination, in answer to an hypothetical question.

Dr. Clark visited Mr. McDonald professionally in

February 1924. He had known deceased for three or four years prior thereto, and had treated him, not regularly but at times, each year until his death. This witness in substance said that there was manifested an impairment of memory. Asked the direct question as to whether or not in February 1924 Mr. McDonald had mind and memory sufficient to execute a document disposing of a portion of his property with a proper understanding, he answered that he had not.

Eight witnesses testified for appellee. Mr. Hodgkins had known deceased for a number of years and saw him frequently, and judging from personal contacts and observations, he expressed the opinion that in 1924 he was mentally competent. Mr. Scribner testified that he knew Mr. McDonald; he had executed a mortgage to the bank in 1930 for $7,000. He talked with him at the time and also talked with him frequently during the last ten years. During these times, in the opinion of witness, Mr. McDonald had sufficient mental capacity to appreciate the purpose and effect of his acts. Another knew Mr. McDonald during his lifetime; saw him often during the last twelve years; judging from his talks with him and seeing him, he thought he had sufficient mentality to know the nature and effect of the execution of the note in 1924. Mr. Jackson, county clerk, saw Mr. McDonald on numerous occasions; took his acknowledgment to a deed in 1928. He was asked:

"In your opinion, along about that time, from your observation of him, do you believe he had sufficient mind, mental capacity, to know the nature and effect of that deed, and the signing and delivery of it?"

He answered:

"Yes, I think so."

This witness also refers to a will executed by Mr. McDonald in 1931, but does not express an opinion as to his faculties at this date. Another witness details the purchase of property from deceased in 1927 or 1928, and says that he had capacity to trade and know the results On cross examination it appears that the trading was mainly through the efforts of a real estate agent. Mr. Ecton, an officer or employee of a bank, thought that in 1924 Mr. McDonald had sufficient mental capacity to know the effect and nature of writing a

check and signing a note. He had also witnessed the will, and thought deceased knew what he was doing. Other witnesses testified to isolated transactions with deceased, and expressed the belief or thought that he knew the effect of these transactions; though it is well developed that since 1927 the attorney for Mr. McDonald was guiding and directing these transactions.

So, after a careful survey of the proof, it is clear to us that the testimony of appellee, consisting solely of lay opinion, is not sufficient, probative value to overcome the weight which appellant's proof carries. In regard to the lay testimony (in one instance particularly) counsel for appellee objected strenuously to questions by appellant intended to elicit lay opinions, on the ground that the witness is a "layman and is not an expert." We have held that the rule is such as ordinarily would have here excluded the laymen's diagnosis as to mental status, and if the rule had been strictly applied in the instance mentioned, little would be left, except the testimony of the physicians. Laymen may relate circumstances, facts, acts and doings of one who may be the subject of the inquiry, and from which the jury may form its conclusion, but the technical question is one to be asked of and answered by those whose experience would lend weight to a conclusion or opinion. Equitable Life Assurance Society v. Green, 259 Ky. 773, 83 S. W. (2d) 478; Equitable Life Assurance Society v. Spencer, 262 Ky. 478, 90 S. W. (2d) 704. We quote from the Green Case, supra, which in turn quoted from the case of Aetna Life Insurance Company v. Gullett, 253 Ky. 544, 69 S. W. (2d) 1068, as follows (83 S. W. (2d) page 480):

> "Not being a physician, he was not qualified to express an opinion. A layman may testify to a thing within his knowledge concerning apparent conditions of another, but he may not express his opinion, since he cannot diagnose disease or give expert evidence with reference thereto."

Our conclusion is that the testimony of the physicians was sufficiently persuasive to lend the greater weight; the testimony offered by appellees as to acts and circumstance was fairly balanced by testimony of appellant's witnesses. We are of the opinion that the conclusion expressed by the chancellor was contrary to the weight of evidence and having this view it becomes

our duty to reverse the judgment with direction that it be set aside, and for proceeding consistent with this opinion.

Judgment reversed. Whole court, except Judge Clay, sitting.