RIDDELL v. PACE et al.

Court of Appeals of Kentucky.

May 28, 1954.

Rehearing Denied Oct. 8, 1954.

on the Clark County National Bank: (c) adjudged that appellee Nona Pace was the owner and entitled to immediate possession of a certain Chevrolet automobile; and (d) adjudged that appellee was the owner of certain household furniture.

During his lifetime, decedent, by deed and by actual delivery, had placed the above property in the possession of appellant who was not related to him by blood or marriage. The judgment was the successful culmination of a suit by appellee, the only surviving sister and administratrix of the estate of Leonard Rye, based upon the theory that appellant had obtained the property by undue influence and fraud practiced upon decedent at a time when he was of unsound mind and physically unable to care for himself.

The record discloses that in October of 1950, appellant rented a small apartment from decedent who lived in adjoining rooms. At the time she was working in a local factory but in December she left work and never returned to her job. The development of the relationship between appellant, Bessie Riddell, and decedent, Leonard Rye, has been minutely examined by the parties, both at the time testimony was taken and in the briefs, and a diverse motive is assigned to each action by the respective parties. We will not here examine every attempt to assign a motive, either good or bad, for every action, and will confine ourselves as nearly as possible to a bare statement of facts except, as an example, we will state that appellee testified the reason appellant never returned to her job was that she had found something better by moving in on the decedent. Appellant explained her action by insisting that her sons, who were all working, desired that she labor no longer.

Appellee insists that an opening move in appellant's alleged attempt to obtain the property of decedent occurred in December, 1950, when appellant prepared a dinner for her children. Decedent contributed a ham to the occasion. He was invited to the dinner with the family and upon acceptance he was given the place of honor

---

Allen Prewitt, Frankfort, Thomas Waller, and R. J. Thompson, Winchester, for appellant.

D. L. Pendleton and V. W. Bush, Winchester, for appellees.

MOREMEN, Judge.

This is an appeal from a judgment of the Clark Circuit Court which (a) cancelled a deed of conveyance from decedent, Leonard Rye, to appellant, Bessie Riddell; (b) cancelled and held for nought a certain check issued by decedent to appellant drawn

at the table. In January, 1951, appellant began cleaning decedent's rooms because, she explained, his legs had become swollen and it became difficult for him to get around. In April of the same year, decedent became seriously ill and at his suggestion on one Thursday appellant called appellee for assistance. Appellee arrived on Friday and called in Dr. Cole who is described in the record as being the family doctor. Dr. Cole examined the man but the record is not too clear as to his diagnosis. However, there is some indication that decedent was suffering from a malignancy or perhaps tuberculosis. Dr. Cole described him as a very sick man in need of immediate hospitalization.

Decedent appears to have been a stubborn man. He refused to enter the hospital in spite of his disease even though the parties vigorously insisted that he go. Dr. Cole determined that some of decedent's immediate discomfort was due to an impaction of his intestines and advised an enema. Appellee had equipment to give an enema at her home in Montgomery County, an adjoining county, and on the following morning she sent her husband for it. She left the house on other business. Appellant testified that decedent said if somebody didn't give him an enema he was going to die. Appellant answered "But Mrs. Pace is liable to run me off," and he said, "Hell, run hell. She ain't going to run anybody nowhere. She won't do anything. If she don't like it she can go herself." After this conversation appellant went out and purchased equipment for the use desired. On this occasion appellee stayed with decedent until the following Thursday and then left for her home with the promise that she would return in two weeks.

Decedent continued to have trouble and Dr. Hainline, who was no stranger to the family, was called. Conflicting motives are assigned for this change. Appellant testified that decedent refused to have Dr. Cole again. Appellee indicated that this was simply another means by which appellant severed decedent's relationship with his family. Decedent continued to refuse hospital care and there is some evidence that

his condition temporarily improved. In accordance with her promise appellee returned in about two weeks and did some general cleaning of her brother's apartment. She returned for a visit about once a week.

In connection with the transfer of the property, appellant testified that decedent gave to her his Chevrolet automobile valued at $1,200 in May, 1951. On June 21, 1951, he conveyed by deed his house. The deed was recorded on the following day. Appellee points with suspicion to the fact that appellant obtained a new lawyer at the time this deed was executed, but appellant's evidence is that the new lawyer was obtained when decedent asked Dr. Hainline to call his family lawyer, Mr. Bush. Dr. Hainline learned that Mr. Bush was out of town and then suggested Mr. Waller who drew up the deed and had it acknowledged. All this took place in the absence of appellant.

On July 24, decedent finally consented to go to the hospital but, before going, he issued to appellant a check in the sum of $5,500 and at the same time manually delivered the bill of sale to his automobile with instructions to appellant to go through the formality of having the automobile legally transferred. The record shows that an erasure had been made on the check which was dated July 5, 1951. It appears that the payee's name was first spelled Ridder instead of Riddell. The record shows that decedent habitually referred to appellant as Mrs. Ridder. Decedent died July 25, 1951.

█ We believe the foregoing synopsis summons consideration of the rule that a transfer of property from one physically or mentally infirm to the one having custody of him will be regarded with suspicion with the result that the burden will be placed upon grantee to show that any influence acquired or confidence reposed was not abused. McDowell v. Edward's Adm'r, 156 Ky. 475, 161 S.W. 534.

█ The influence acquired and exerted must be of sufficient force to destroy the free agency of the grantor and to con-

strain him to do, against his will, that which he would otherwise have refused to do and this pressure may be applied either directly or indirectly. Combs v. Combs, 271 Ky. 543, 112 S.W.2d 989.

Although circumstances such as are here presented should be considered with suspicion, that attitude alone should not be the decisive factor in the case, because we have several times held that proof of undue influence must amount to more than a bare showing that the opportunity for its imposition existed. Martin v. Martin, 286 Ky. 408, 150 S.W.2d 696; Kentucky Trust Co. v. Gore, 302 Ky. 1, 192 S.W.2d 749; Faulkes v. Brummett's Adm'r, 305 Ky. 434, 204 S.W.2d 493; and Calveard v. Reynolds, 281 Ky. 518, 136 S.W.2d 795.

■ Equally intrenched in the law of this jurisdiction is the idea that one may dispose of his estate in whatever manner he chooses if it be the result of his unconstrained choice, with the corollary thought that it is not within the province of the court to make a disposition different than that made by the grantor or testator, as the case may be, notwithstanding the fact that the court might not agree with that person's conception of right or wrong or even fair play. Calveard v. Reynolds, 281 Ky. 518, 136 S.W.2d 795; Sullenger v. Baker, 296 Ky. 240, 176 S.W.2d 382. Throughout the opinions in some of the above cited cases runs the thread of thought that all acts of kindness are not stimulated by motives of greed and that often the recipients of such acts desire to compensate those who have aided and administered to their needs in time of distress and suffering. All influence is not undue.

If we return again to consideration of the facts adduced by the evidence, we find the picture of a man who appears to be determined and fully capable of exercising his will up to even a few hours before his death. A fellow patient of decedent, who occupied the adjoining bed at the hospital during his final illness, testified that decedent had stated to him concerning Mrs. Riddell at a time when she was out of the room:

"He just said she was good to him, she was faithful to him, she waited on him. And then he had deeded his place to her. He told me his sister wouldn't have much to do with him, and wouldn't take care of him; and that that is why he gave her this place. He said he had left his sister about seven thousand dollars. He said he had left Mrs. Riddell some money, but he didn't say how much. Then he talked to me about that he had never been baptized, but he knew he was saved; that he was ready to go."

■ Insofar as the testimony as to the mental incompetency of decedent is concerned, we believe it to be insufficient. It consisted in the main of conclusions by certain people not skilled in the science of mental health that decedent's mind was affected by his poor health. These conclusions do not constitute grounds upon which to base a finding that decedent was mentally infirm. The testimony of such unskilled witnesses should be confined only to stating facts and circumstances. McDonald's Ex'r v. Transylvania University, 274 Ky. 168, 118 S.W.2d 171. We have also held that evidence of physical infirmity alone is not evidence of mental impairment. Calveard v. Reynolds, 281 Ky. 518, 136 S.W.2d 795.

The only experts who testified were the two doctors who had attended decedent. Dr. Cole, who first saw him, refused to voice an opinion as to his mental condition while Dr. Hainline, who attended him during his last illness, testified that decedent had suffered no impairment of his mental faculties.

We are of opinion that the judgment of the chancellor was clearly erroneous and that appellant, Bessie Riddell, was entitled to retain the real property, the check and the automobile. There seems to be no dispute concerning the items of household furnishing and the judgment is correct in that respect.

Judgment reversed.