# Walton Brick Co. v. Anderson Foundry & Machine Works.

(Decided February 15, 1911.)

## Appeal from Boone Circuit Court.

Issue Out of Chancery Purely Legal—Finding of Jury—Conclusiveness.—Plaintiff sold certain machinery to defendant, accompanied by written guaranty. In an action to enforce a materialman's and mechanic's lien, the defendant pleaded failure of terms of guaranty. Certain issues which were purely legal were on motion of defendant submitted to a jury. On these issues the jury found adversely to the defendant. Held, that the finding of the jury was conclusive unless flagrantly against the evidence, and this not appearing the judgment of the chancellor entered in conformity to the verdict will not be disturbed on appeal.

J. G. TOMLIN and JOHN L. VEST for appellant.

HARRY BRENT MACKOY and MACKOY and MACKOY for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Anderson Foundry & Machine Works, on February 24th, 1908, sold to appellant, Walton Brick Company, certain machinery for making brick. For this machinery the Walton Brick Company agreed to pay $4,063.50. Of this sum $2,133.50 was to be paid upon the arrival of the machinery at Walton, Kentucky, and the balance when said machinery was in proper working order and making at the rate of 2,000 perfectly formed brick per hour. The machinery arrived at Walton in March, 1908. Thereupon appellant paid to appellee $2,031.75. On June 29, 1908, after the machinery had been installed and had been making brick for several weeks, it paid the additional sum of $1,000. The balance, 1,031.75, was not paid, and appellee brought this action against appellant for the purpose of enforcing a mechanic and materialman's lien. During the trial it was admitted that appellant, at the request of appellee, had furnished certain small articles of the value of $68.20. Upon final submission of the case, the chancellor gave judgment in favor of appellee for the sum of $1,031.75, subject to a credit of $68.20, and also adjudged appellee a lien upon certain real property, ma-

chinery, etc., constituting the brick manufacturing plant owned by appellant. From that judgment this appeal is prosecuted.

Briefly stated, the facts are as follows: About ten days before the contract of purchase was entered into, appellee submitted to appellant a proposition, in writing, by which it agreed to furnish certain machinery designated therein. This proposition contained certain guaranties. Those that are material to this case are as follows:

"Our proposition also contemplates that in event you favor us with order that we will send a competent engineer to your plant free of cost to yourself, who will make a lay-out for your buildings, show you what changes are necessary in order to install the above named machinery, and he will then make a detailed drawing and furnish you with blue prints so that any carpenter or millwright can install the machinery such as we would send you, and when you are ready to operate same we will also agree to furnish you a first-class man both as an engineer and as a brickmaker for the starting up of your plant to see that the machinery fulfills the guarantee that we will give with same, however, the expense of the man sent will be $5 per day and his car fare to and from Anderson, and wish to state you can use him as few or as many as you desire.

"Our guarantee contemplates that if for any reason the machinery furnished should not do what we claim for it, all we ask will be the return of same to cars and we will refund any and all money that had been paid upon same.

"The terms of the sale would be one-half cash when all the machinery has arrived upon car in your city, balance after machinery is started and guarantee fulfilled in accordance with contract that we would enter into.

"Also wish to state that we will guarantee your material to make brick equal to the samples that we have submitted made from the same material, provided, of course, that it is burned in a manner and with the equipment necessary for burning dry press brick. What we wish to convey is, that we guarantee that your clay properly burned will make brick similar to the samples that we have submitted, referring to the same clay that you shipped us for making up the samples."

The contract of sale was on one of the ordinary forms employed by appellee. Appellant being in doubt as to

whether the foregoing guaranties were contained in the contract, declined to take the machinery. Appellee, upon being informed of the ground of objection, telegraphed to appellant directing it to make appellee's letter of February 14th a part of the contract.

Appellant defended on the ground that there was an absolute failure all along the line of the guaranties made by appellee; it also sought to recover damages by way of counterclaim and set-off.

Upon the completion of the pleadings and the calling of the case for trial, appellant moved to have certain issues out of chancery submitted to the jury. This motion the court granted. Of the issues submitted, Nos. 1, 2, 3 and 5 were prepared by counsel for appellant; No. 4, involving the item of $68.20 which was submitted by appellee, was not submitted to the jury. The following are the questions submitted, and the finding of the jury thereon:

"To question 1. Will the clay upon the land of the defendant Walton Brick Company, at Walton, Ky., when properly burned, make brick equal to the samples furnished by plaintiff to defendant?

"Answer. Yes. By eleven.

"To question 2. Was the brick press, or any part thereof, furnished by plaintiff to the defendant, a new or second-hand press, and if second-hand how much less was it worth than if it had been new?

"Answer. Yes, but worth as much as one mentioned in contract.

"To question 3. Were the brick that were made by the plaintiff for the defendant in its yards at Walton, Ky., made in such a manner that they could be burned into dry pressed brick equal to samples furnished by plaintiff to defendant?

"Answer. Can't agree.

"To question 5. Was, or not, the man furnished by plaintiff to defendant to operate said machinery, a competent man to properly adjust and operate the said machinery?

"Answer. Yes. By ten.

"To question 6. Was, or not, said machinery furnished defendant by plaintiff at the yard of the Walton Brick Company, at Walton, Ky., sufficient and proper machinery, when properly adjusted and operated, to

make, when properly burned, brick equal to the sample furnished by plaintiff to defendant?

"Answer. Yes."

It is conceded by counsel for appellant that the evidence on the trial tending to prove the quality of the machinery and the qualifications of appellee's expert were sufficient for that purpose. These matters embraced three of the questions submitted. That being true, the only questions left for consideration are Nos. 1 and 3, which we again state in full:

"To question 1. Will the clay upon the land of the defendant Walton Brick Company, at Walton, Ky., when properly burned, make brick equal to the samples furnished by plaintiff to defendant?

"Answer. Yes. By eleven.

"To question 3. Were the brick that were made by the plaintiff for the defendant in its yards at Walton, Ky., made in such a manner that they could be burned into dry pressed brick equal to samples furnished by plaintiff to defendant?

"Answer. Can't agree."

As to question No. 1, the finding of the jury was in favor of appellee. The jury could not agree upon an answer to question No. 3. Upon these questions the evidence, in brief, is as follows: Some time prior to the purchase of the machinery J. D. Mayhugh, appellant's president, sent some of the clay owned by appellant to Chisholm, Boyd & White Company, of Chicago, one of appellee's competitors. There a test was made, which showed that the clay would make good pressed brick. Appellant also sent some of the clay to appellee. Appellee sent it to a brick concern in Chicago. Its test also showed that good brick could be made out of appellant's clay. Aside from this testimony, appellee's manager and Messrs. McLaughlin and Kautz, the latter two being experts and in the employment of other companies at the time, all testified that the clay could and did make good dry-pressed brick. A. J. Flood, president, and Leslie W. Flood, erecting engineer of the Chisholm, Boyd & White Company testified to the same effect. On the contrary, J. D. Mayhugh, appellant's president, testified that the clay would not make good dry-pressed brick. Mayhugh, however, had had no experience previous to that obtained in operating appellant's plant. Mr. Rusche, the appellant's burner, also gave it as his opinion that the

clay would not make good dry-pressed brick. He had, however, practically no experience in the making of dry-pressed brick, but had been in the soft-mud brick business a great many years. Baxter and Stillwaugh, who made tests with the same clay in their kilns at Newport, Kentucky, and Hamilton, Ohio, also testified to the same effect. Upon cross-examination, Stillwaugh admitted writing to Mayhugh a letter, which is in evidence and wherein he used the following expression: "The good bricks sent are off the top of the kiln where they got plenty of fire, and it would take a very hot fire to burn them." In another letter he said: "You can make some very nice brick when the clay is worked up good, but they will not burn hard only where there is a very hot fire." Baxter also admitted he had gotten some good brick out of the test made by him, and he stated that the percentage of good brick would have been larger if he had burned the brick at a different time from his own.

Appellant places particular force and emphasis upon the fact that about 200,000 brick were made and placed in it kiln, and the evidence shows that none of them were good dry-pressed brick. On the other hand, appellee's contention is that the kiln was not properly prepared for burning dry-pressed brick, and that the brick were improperly burned. The evidence shows that dry-pressed brick require a very different treatment and altogether different kind of kiln from that used in making soft-mud brick. In order to get the requisite heat for dry pressed brick, it is necessary to have a permanent walled, down-draft kiln. Appellant used a mud-daubed kiln, which was altogether insufficient for the purpose. While it is true that appellant's failure with the machinery and the expert in charge to get even a small percentage of good dry-pressed brick is a strong circumstance tending to show that the clay would not, even if properly burned, make dry-pressed brick, it is by no means conclusive of the question, as so many elements enter into the manufacture of good brick. It is manifest that question No. 3 had only an indirect bearing upon the character of the clay and the character of the machinery. Upon this question the jury did not agree, but they did agree that the machinery was all right and that the clay, if properly burned, would make brick equal to the samples furnished by appellee to appellant. In a case of purely equitable cognizance, the chancellor has

the discretionary power to direct an issue of fact to be tried by a jury; and its verdict is, generally speaking, treated by the chancellor as conclusive between the parties. But it is not necessarily conclusive, for the reason that the chancellor simply seeks the advice of the jury to aid him in coming to a correct conclusion on a disputed question of fact. This principle, however, does not apply where there is a distinct legal issue made in an equitable action. In such a case the verdict of the jury is conclusive between the parties, unless the court, upon a motion for a new trial, is satisfied that is it palpably against the evidence. (Hill v. Phillips' Admr, 87 Ky., 169; Baxter, et al. v. Knox, 17 Ky. Law Rep., 489; Small, et al. v. Reeves, et al., 104 Ky., 289.)

As the real issue in this case was, whether or not appellant's clay, if properly burned, would make brick equal to the samples furnished by appellee to appellant, and, as this question was decided by the jury adversely to appellant's contention, and we are unable, upon a careful review of all the evidence, to say that its finding is flagrantly against the evidence, we conclude that the judgment should be affirmed, and it is so ordered.

JUDGE LASSING not sitting.