## Bell v. Duncan, et al.

(Decided November 24, 1922.)

## Appeal from Kenton Circuit Court.

1. Courts—Jurisdiction to Try as to Defendants Summoned Outside of County.—The summoning of one of several codefendants in the county in which the suit is filed, where the petition states a cause of action against the defendant so summoned, confers jurisdiction on the court to try the action as to the other defendants summoned outside of the county, notwithstanding the fact that the defendant served in the county voluntarily entered it to submit to the jurisdiction.

2. Bills and Notes—Signatures—Issue Cognizable.—The defense to a suit on notes, that the signatures to the notes were fraudulently procured, when controverted, presents an issue cognizable both in law and equity.

3. Bills and Notes—Notice of Infirmity—Defenses.—The defense to a suit for the collection of notes, that the holder had notice of the infirmity in the notes when they were acquired by him, when controverted, raises a legal issue triable by a jury.

4. Trial—Equity—Transfer of Causes.—In an ordinary action, if all the issues are legal and none equitable, neither party has the right to have any of them transferred to equity, but if some of the issues are purely legal and others cognizable concurrently either in a court of law or of equity, but none of them are of exclusively equitable cognizance, neither of the parties can have the action or any of the issues transferred to equity except by consent.

5. Trial—Transfer of Causes.—Where one of the issues in an ordinary action was cognizable in law or equity, and the other ex-

clusively cognizable in law, it was error to transfer the cause to equity and to deny the plaintiff the right to a trial by a jury.

B. F. GRAZIANA for appellant.

ROBERT C. SIMMONS, T. W. THOMAS and R. C. P. THOMAS for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Appellant, W. M. Bell, sued the appellees and T. J and Mell Bauhard, in the Kenton circuit court, on two notes, of one thousand dollars each, dated December 22, 1914, and maturable February 1, 1916 and 1917, respectively, subject to a credit on each of the notes of five hundred dollars as of the date of execution. He alleged that T. J. and Mell Bauhard indorsed and delivered the notes to him for a valuable consideration, and he asked judgment against them and the appellees herein, makers of the notes, for the balance due, with interest until paid.

Appellees resisted the suit on the grounds: (1) That the Kenton circuit court was without jurisdiction; (2) that their signatures to the notes were procured by fraud; and (3) that appellant was not a holder in due course. Over the objection of appellant the cause was transferred to the equity docket, and on the submission of the case the chancellor rendered judgment dismissing the petition.

In view of the conclusions that we have reached, only one of the numerous assignments of error will be considered on this appeal, that is, the ruling of the trial court in transferring the case to the equity docket and in refusing, on appellant's motion, to re-transfer it to the ordinary docket. The correctness of that ruling, however, depends upon the jurisdiction of the Kenton circuit court.

The jurisdiction as to appellees is denied on the ground that neither the plaintiff nor any of the defendants resided in Kenton county, that the summoning of Mell Bauhard in that county was prearranged for the purpose of conferring jurisdiction on the Kenton circuit court, and, in consequence, the subsequent summoning of appellees outside the county did not bring them within the jurisdiction of the court. The question may be disposed of without elaboration. The action is a transitory one and it is admitted that section 78 of the

Civil Code would ordinarily apply. In our opinion it is controlling when considered in connection with the facts appearing in the record, the most pertinent of which are that Mell Bauhard was made a codefendant of appellees, the petition stated a cause of action against him, and, after service of process on him in Kenton county, judgment was rendered against him. In view of these facts, the jurisdiction of the Kenton circuit court was complete, and this is true under Knoxville Banking & Trust Co. v. Mershon, etc., 152 Ky. 169, and the authorities therein cited, even if it be conceded that Mell Bauhard went to Kenton county for the purpose of submitting to that jurisdiction.

Aside from the jurisdictional question just disposed of the pleadings present two issues; first, as to whether the signatures to the notes were fraudulently procured; and, second, as to whether appellant had notice of that infirmity in the notes before purchasing them. Appellees say that the first question is one that a court of equity can alone adjudicate, and for that reason it was proper to transfer the case to equity and try it without the assistance of a jury. In support of that view they refer to the fact that, in the prayer of the answer, they asked for a cancellation of the notes. We do not think that the asking of that relief could have the effect of changing the character of the proceeding or of depriving appellant of the right to a trial by jury of any legal question at issue. The suit was an ordinary one and the defenses were cognizable at law. The answer was not made a cross petition against appellant or Bauhard Brothers. It was a defense to the notes in the hands of appellant, and the asking that the notes be cancelled was surplusage, since the sustaining of the defenses would not have resulted in a cancellation of the notes, for the obvious reason that there was no cross petition or counterclaim against Bell or Bauhard Brothers, and such an adjudication would have been unauthorized under the pleadings. It is clear, therefore, that the prayer for a cancellation of the notes did not affect the character of the issues presented.

Section 10, et seq., of the Civil Code, deals with the various issues exclusively and concurrently cognizable in chancery and at law. Subsection 4 of section 10 authorizes the court in its discretion or on motion of either party, to transfer an action from the ordinary to the equity docket if it shall be of opinion that such

transfer is necessary because of the peculiar question involved, or because the case involves accounts so complicated or of such great detail of facts as to render it impracticable for a jury intelligently to try the case. There were no accounts or complicated facts in issue here, and manifestly there was no "peculiar question" involved that rendered it impracticable for a jury intelligently to try the case. It follows that this section of the Code is inapplicable.

Subsection 4 of section 11 of the Code, provides that, "If there be an issue which was not cognizable in chancery, and an issue which was cognizable in chancery—but not exclusively so, before the said day (August 1, 1851), the case shall not be transferred to the equity docket without consent of the parties." In the case at bar we have an issue not cognizable in chancery, that as to whether appellant had notice of the infirmity in the notes; and also one cognizable in chancery, but not exclusively so—that as to whether there was fraud in procuring the execution of the notes. So this provision of the Code, in our opinion, is directly applicable.

The authorities relied on by appellees do not oppose the conclusion just stated. Bosley v. Mattingly, 14 B. Monroe, 72, was a suit for a debt due. The defense was that the debt was part of the consideration for the sale of a house and lot; that the contract of purchase was executory, and the plaintiff was wholly unable to comply with its terms. The title to the property was put in issue, and the defendant made other persons parties to his answer, prayed for a rescission of the contract between the parties, and that an accounting be taken of rents and improvements. There an exclusively equitable claim was asserted against new parties that only a court of equity could adjudicate. The case is patently different from the one at bar.

In Hunt v. Nance, etc., 122 Ky. 274, also cited by appellees, upon the filing of answer and other pleadings in that case the issue became one of which only a court of equity could take cognizance. That fact distinguishes it from this case, in which there is no such issue. The opinion in that case, however, says: "In many cases courts of law will afford relief against fraud or mistake, as where one is sued upon a note or other contract to which his signature was obtained by fraud. In such case he may in a court of law resist its payment on

that ground. But only a court of equity has jurisdiction to cancel or declare void a deed or other instrument, whether upon the ground of fraud or mistake.'' It will be seen, from the language quoted, that there is a distinct recognition in that opinion of the power of courts of law to try issues of fact with respect to fraud in the execution of notes and other contracts.

Gray, et al. v. Grimm, 157 Ky. 603, is also inapposite. There the suit was brought in equity, and, as in the Bosley case, the answer, in addition to charging fraud, set up a counterclaim and asked to be adjudged a lien on the real estate described. All that the court held in that case was that it was not error to refuse to transfer the case to the ordinary docket for a trial by a jury of the question of fraud, because that issue was one of which courts in chancery had jurisdiction before the first day of August, 1851. The ruling in that case is based on Ford v. Ellis, 21 Ky. Law Rep. 1837, which was an equitable action to set aside a gift of property and cancel a conveyance of land on the ground of mental incapacity of the grantor. The chancellor ordered a trial of an equitable issue out of chancery, and it was held that, although the verdict of the jury on that issue was not conclusive, it was entitled to considerable influence, and, when confirmed by the chancellor, would not be disregarded by this court. The opinion is wholly inapplicable to appellees' contention.

In the case at bar there was but one defense that was cognizable in law or equity—that of fraud in procuring the signatures to the notes. That defense could be made either in law or equity. It was made in law, because the action was brought at law; but by making a defense cognizable both at law and in equity, appellees could not divest appellant of the right to have his suit tried at law. Furthermore, the other defense of notice of the infirmity in the notes was purely a legal question not cognizable in equity, and, even if the first question had been exclusively cognizable in equity, appellant was entitled to have the second one passed on by a jury. The rule as to actions commenced at law, as laid down in Newman on Pleadings, page 88, is: ''If all the issues are legal and none equitable, then of course neither party has the right to have any of them transferred to equity. If some of the issues be purely legal, and others cognizable either in a court of law or of equity, but none of them are of exclusively equitable cognizance,

then likewise neither of the parties can have the action or any of the issues transferred to equity except by consent.'' In the instant case one of the issues was undoubtedly legal, and certainly no one would contend that the other—*i. e.*, the fraudulent procurement of the signatures—was not cognizable in either a court of law or equity. Hence the rule of practice announced in Newman is directly in point.

It is a familiar rule, established by a long line of decisions of this court, that where a distinct legal issue is made, even in an equitable action, either party has a right to have such issue decided by a jury when application therefor is seasonably made. Morawick, etc. v. Martineck's Guardian, etc., 128 Ky. 155; Barton v. Barton's Admr., et. al., 142 Ky. 487; Proctor v. Tubb, et al., 166 Ky. 677; Scott v. Kirtley, 166 Ky. 727; and notes to section 12, Civil Code. There was certainly one such issue in this case, and another concurrently cognizable in law and equity. The action was brought at law, and, the issues being cognizable there, appellant, under the authorities cited, had the right to have his case tried in that forum.

We do not deem it proper to discuss any of the other questions raised on this appeal, and we, of course, do not decide any of them. But, for the reasons stated, the judgment is reversed and the cause remanded for further proceedings.