## Castleman v. Continental Car Company, et al.

### (Decided May 4, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Equity—Court Held Not to have Erred in Ordering Trial of Issue Before Jury.—In an action to enforce a lien against a manufacturing plant, under Ky. Stats., sections 2487, 2499, the lien being claimed for services performed under contract, held, that the court did not err in ordering trial before a jury of issue as to whether or not a contract existed; the equitable right to the lien depending entirely on the decision of that issue.

2. Equity—Verdict of Jury on Purely Legal Issue Treated as in Ordinary Trials.—Where chancellor transferred purely legal issue to common-law branch of court for trial by jury, the verdict of the jury thereon will be treated as one in other ordinary jury trials.

3. Brokers—Evidence as to Net Cost of Construction of Automobile Bodies Held Admissible in Action for Commission for Sale.—In an action to recover 10 per cent. commission on automibile bodies sold to the government, where plaintiff testified that in figuring the bids he added 50 per cent. for defendant and 10 per cent. for himself, and defendant's president testified that 10 per cent. commission was absurd, and that bids were submitted at a small margin of profit, plaintiff should have been permitted to introduce evidence as to the net cost of the construceion of the bodies, not only for the purpose of contradicting the testimony of defendant's president and other witnesses, but also for the purpose of corroborating his testimony, as well as to prove an issue made by the pleadings that the submitted bid included 50 per cent. of the cost price for defendant's profit and 10 per cent. for plaintiff's commission.

4. Brokers—Evidence Held Admissible on Question of existence of Contract to Pay Commission of Certain Percentage.—In action for 10 per cent, commission on automobile bodies sold to the

government where plaintiff alleged and testified that in figuring the bid 50 per cent. was added for the defendant and 10 per cent. for himself, and defendant testified that because of the small profit it would have been absurdity to agree to pay plaintiff 10 per cent. commission, the court erred in not permitting plaintiff to prove that the defendant subsequently submitted another bid to the government a great deal smaller than the former bid, at a time when material and labor were higher.

5. Appeal and Error—Objection to Admission of Evidence Must be Made Below.—Claimed error in the admission of evidence cannot be considered on appeal, where no objection was made to its introduction.

6. Trial—Mere Inquiry of Juror by Party's Employee as to Whether Decision had been Reached Not Improper Conduct.—There was no improper conduct, where detective for one of the parties made inquiry of a juror as to whether the case had been decided by the jury, where, upon being informed that it was not, he ceased his conversation and made no further reference to the case.

7. New Trial—Detective, Employed to Obtain Information Concerning Prospective Jurors, Must Not Communicate Such Fact to Jury.—There is no impropriety in counsel or litigants, in cities like Louisville, engaging the services of a detective to legitimately obtain information concerning prospective jurors for the purpose of enabling counsel to properly make their selection at the trial, but if the person whose assistance is so obtained manifests interest in the trial and either directly or indirectly communicates the fact of his employment to any members of the jury, or lets any of its members know of his connection with the case, the court would be justified in setting aside the verdict.

JOHN D. CARROLL, DAVID R. CASTLEMAN and SHACKELFORD MILLER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellees.

Opinion of the Court by Judge Thomas—Reversing.

This equity action was filed in the Jefferson circuit court by appellant and plaintiff below, S. T. Castleman, against appellees and defendants below, Continental Car Company, Continental Car Company of America, and others, in which plaintiff sought the recovery of a judgment against defendant, Continental Car Company, for the sum of $39,000.00, and the assertion and enforcement of a lien against its manufacturing plant in the city of Louisville, which lien was claimed under the provisions of article III of chapter 79 of the statutes, it being alleged that defendant, Continental Car Company, after the performance of the services sued for, sold its plant to the ap-

pellee, Continental Car Company of America. It was alleged in the petition that the Continental Car Company entered into a contract with plaintiff about the middle of May, 1917, whereby it agreed to enlist his services in aiding it to procure a contract from the federal government for the construction of certain described bodies for trucks which the government desired manufactured for use in the World War into which it had recently entered. Bids for the construction of the bodies were to be opened at Chicago, Illinois, on June 10, 1917, and the data upon which a bid could be submitted had to be hurriedly obtained. Defendant succeeded in obtaining a contract for the construction of two thousand (2,000) bodies at the price of $195.00 each, or a total sum of $390,000.00, ten per cent of which was the amount claimed in the petition. The answer denied the alleged contract or agreement for the payment of any commission to plaintiff on the contract price for manufacturing the bodies, but admitted an agreement to pay ten per cent commission to plaintiff on the price of a patented attachment of which Charles Golding, of Houston, Texas, was the patentee, and designed for holding gasoline drums in place during transportation by the truck, upon condition, however, that the government would consent to accept the bodies with an agreed price for the patented attachment, for which plaintiff was in some way acting as agent of the patentee under an agreement with the latter to pay him five dollars royalty on each attachment used.

Appropriate pleadings made the issues and extensive proof by depositions was taken, but the chancellor on his own motion transferred the issue as to the existence of the contract sued on to one of the common law branches of the Jefferson circuit court for the trial of that issue by a jury. Plaintiff objected to that order, but the objection was overruled and when the cause came on for trial in the court to which the issue of fact was transferred plaintiff moved that court to transfer the cause back to the equity tribunal, which motion was likewise overruled, and the jury after hearing extensive evidence, the greater portion of which was oral, returned its verdict finding that no such contract was made and that verdict was certified to the equity branch of the court from which it was transferred, and that court overruled plaintiff's motion to disregard the verdict of the jury and to determine the issue from the testimony taken while the cause was pend-

ing exclusively in equity, but that motion was overruled and a judgment entered dismissing the petition, from which this appeal is prosecuted.

It is first seriously insisted that the court erred to the prejudice of plaintiff in ordering the trial of the contested issue of fact before a jury, but we entertain no doubt of the propriety of that ruling. The issue to be tried was essentially a legal one, triable by a jury, and the equitable right to the lien asserted depended entirely upon the decision of that issue, since if there was no contract there could be no lien. Without the attempted assertion of the lien the case was purely a common law one possessing no equitable features and triable exclusively by a jury, and subsection 3 of section 10 of the Civil Code authorized the court to make the transfer on its own motion. Supporting authorities will be found in note 2 to section 12 of the Civil Code, and a late case sustaining the practice is that of Scott v. Kirtley, 166 Ky. 727. We deem it unnecessary to further elaborate the question, since we are convinced that no error was committed in ordering the transfer. That being true, and the issue being a purely legal one, the verdict of the jury will be treated as one in other ordinary jury trials. Hill v. Phillips, 87 Ky. 169; Morawick v. Martineck, 128 Ky. 155.

The plaintiff, therefore, made motion for a new trial in the common law branch of the court where the jury trial was had, as was his duty to do, in which he asked that the verdict be set aside upon numerous grounds therein set out. The motion was overruled, and on this appeal the only questions for determination are those raised by it.

The evidence discloses without contradiction that plaintiff first called the attention of defendant to the fact as well as the time of the letting of the bids by the government and carried with him to its plant some blue prints containing the required specifications. From that time till late in the night of June 8, 1917, he was actively engaged in writing letters to firms and companies throughout the country to obtain prices on material necessary for the construction of the truck bodies in order to obtain the necessary data upon which the proposed submitted bids could be estimated. So active was he, both at the plant of defendant and at his own office in the city of Louisville, where he dictated most of the letters and other documents to his stenographer, that defendants' witnesses claimed that he was unduly officious. On the

last date mentioned at about 11 o'clock p. m., the bid was finished in his office, which was $195.00 per body without covers for type B, and $259.00 with covers, a difference of $64.00 for the cover. Plaintiff thereupon took the bid and was carried by one of the defendants' employes to the train which he took for Chicago, and on June 10 submitted it to the proper government officer. He there learned that the submitted bid was among the low ones and that there was a probability of defendant securing the contract. But he also learned while at Chicago of a possible change being made in the submitted specifications but was unable to ascertain the extent. Upon returning to Louisville on June 11 he found the president of defendant, Continental Car Company, absent from the city and learned that he was in Lexington. Plaintiff claims that he had a conversation with defendant's president over the telephone and informed him that plaintiff was going to Washington to ascertain the extent of the contemplated changes in the specifications for the purpose of ascertaining whether they would be such as to require a change in the bid. The president admits he was called over the 'phone at Lexington by plaintiff but for some cause he declined to talk. Plaintiff went to Washington and found that it was unnecessary to make any changes in the submitted price and later the contract was awarded.

Plaintiff, in an amended petition, pleaded that in estimating the submitted bid there was included in it 50% of the total cost price for the manufacture of the beds and there was added thereto 10% upon that sum for his commission, the total of which aggregated the price contained in the submitted and finally accepted bid to the government authorities. Those allegations were specifically denied in a reply thereto, and plaintiff in his testimony supported them, but they were denied by the president of defendant and, perhaps, one or two other witnesses who testified in its behalf. On the trial before the jury plaintiff sought to obtain from the president of defendant and others of its witnesses the estimates of actual cost admittedly made by them and upon which the submitted bid was formulated, but each of them, while admitting they had possessed such written estimates while drafting the bid, claimed that they were lost and could not be found. Plaintiff, however, introduced a letter addressed to defendant before the making of the bid which was written by Carpenter & Company, of Chicago, Illinois, who were extensive dealers in canvas and material out of which the

covers for the bodies were to be manufactured, and in that letter it was stated that the material for the covers would cost $40.00 for each bed; 50% of that sum would be $20.00 and 10% of it would be $4.00, making the submitted price of $64.00 for the covers, and that was the exact sum contained in the submitted bid for the covers, and that fact strongly corroborated plaintiff's contention as to the basis of the submitted bid, though his percentage was therein calculated upon the cost price of the covers instead of their gross price. The president of the company testified, on page 154, volume 1, of the transcript of evidence, that in calculating the net profit to his company for manufacturing the bodies and the tops, in making his estimates he figured on a basis of from ten to fifteen per cent and which was included in the submitted and accepted bid. That testimony immediately followed a denial by him that he included any per cent in the bid for commission for plaintiff, and it was followed by an express denial that he estimated his profit in his bid ''anything like 50½,'' and he then said: ''We would never get a contract; nobody makes that much money net profit.''   In other parts of his testimony in substantiation of the theory of defendant he testified that plaintiff's claim for a contract for 10% commission would have been absurd, which conclusion was necessarily drawn from the fact of the small per cent of profit upon which he testified the submitted bid was made and accepted.   To combat that testimony, as well as to substantiate his amended pleading, plaintiff offered to prove by a mechanic who assisted in the construction of the bodies that their total cost without tops, including material and labor, was not exceeding $75.00 each, but the court declined to admit it, and to which ruling exceptions were taken.   In order to show, or tend to show, the impropriety of plaintiff's employment as well as the non-necessity therefor, the president of defendant testified that he had no trouble or difficulty in obtaining data from the War Department to assist him in making up his bid.   To refute that claim in the witness' testimony, plaintiff offered to introduce a letter written by the witness to the government quartermaster at Chicago, who represented the government in the negotiations for the contract, in which letter the complaint was made that the repeated requests by the writer, who was the witness, for such data had not been responded to.

Evidently the offered testimony by plaintiff as to the net cost of the construction of the bodies was competent, not only for the purpose of contradicting the testimony or defendant's president and others of its witnesses, but also for the purpose of corroborating his testimony as well as to prove an issue made by the pleadings that the submitted bid included 50% of the cost price for defendant's profit, and 10% for his commission, and it likewise refuted the theory of defendant running throughout the case, that because of the small profit it was making it was nothing short of absurdity to agree to pay plaintiff the commission which he seeks to recover in this action.

In the cross-examination of defendant's president, plaintiff's counsel asked him if his company, the defendant, in October, 1918, did not submit another bid to the government to construct and furnish to it another installment of the exact duplicate of the same bodies that it constructed under the first contract, at the price of $144.20 each and for which it procured $195.00 each under its first employment. An objection to that question was sustained and the avowal contained an affirmative answer. (Transcript of evidence, page 201.) Plaintiff then offered to prove that the material, as well as labor, used in the construction of the bodies was higher in 1918, at the time of the submission of the second bid proposed to be proven, than they were in 1917, when the contract was obtained; but that was also refused, to which he excepted. We are convinced that such offered testimony was competent, not only for the purpose of contradicting the theory of defendant as to the extent of its profits calculated in the submitted price of $195.00 per bed, but also for the further purpose that the profit on that price was sufficient to justify the payment of plaintiff's claimed commission and still leave a handsome profit for defendant; for it must be remembered that the testimony as to small percentage of profit estimated in the bid could fill no office in the case except to sustain the denial of the amended petition and to bolster up the contention of defendant that it would be an absurd and preposterous proposition to pay plaintiff the commission which he claims in the face of the fact that it was realizing a profit of only a small percentage. The admission of the testimony of plaintiff's president of the estimated percentage of profit to his company in the submitted bid could have filled no office in the case except to sustain the contention and theory that no one of business prudence would agree to pay plaintiff a com-

mission of 10% when that amount included practically all the profit which it expected to realize. If the evidence was admissible for that purpose, and we are inclined to think it was, then it was equally competent for plaintiff to combat with his testimony the fact upon which the conclusion was drawn and to thereby demonstrate, not only the falsity of plaintiff's testimony upon that point, but at the same time established his pleading and theory that the submitted bid contained not only his commission, but in addition a handsome profit for defendant. On both of those points we think the rejected testimony was vitally material and that the court erred to plaintiff's prejudice in rejecting it, and thereby withholding it from the jury.

Plaintiff furthermore complains that the court erred in permitting defendant to prove by the president of the Kentucky Wagon Manufacturing Company (R. V. Board), that plaintiff made a proposition to that company similar to the one which the defendant in this case contends was made to it by him and upon which his services were enlisted, i. e., that his compensation was to be realized only from the patent attachment on the beds, if the government should conclude to accept them, and not to be estimated on any part of the contract price of construction. We do not think that testimony was competent. Stoner v. Nall, 149 Ky. 124. But the error in admitting it cannot be considered on this appeal as a ground for disturbing the judgment for the reason that no objection was made to its introduction as is shown on pages 259 and 260 of the transcript of evidence.

Another ground urged for a reversal is that defendants employed a detective agency to assist in the selection of the jury to try the case, and that one Hager, the head of that agency, not only assisted in the selection of the jury but attended at the trial and conversed with one of the jurors during the trial. It is admitted by him that he did make inquiry of one of the jurors as to whether the case had been decided by the jury, but, upon being informed that it was not, ceased his conversation and made no further reference to the case. The facts disclosed by the record concerning this matter are not sufficient to justify the positive conclusion that any improper conduct was engaged in by Hager or any one connected with his detective agency, though the evidence proves some opportunities therefor. However, it is proper to state that there is absolutely no fact appearing in the record remotely or otherwise connecting defendant's counsel with

any misconduct of the detective agency, if any. We can see no impropriety in counsel or litigants in cities like Louisville engaging the services of some one to legitimately obtain information concerning prospective jurors for the purpose of enabling counsel to properly make their selections at the trial. But if the person whose assistance is obtained manifests interest in the trial and either directly or indirectly communicates the fact of his employment to any member of the jury or let any of its members know of his connection with the case it would be highly improper and would no doubt justify the setting aside of the verdict. The evidence in the record establishes no such facts in this case and for that reason there exist no grounds for sustaining this contention. The extent of such assistance should be alone confined to furnishing information as to the standing, surroundings and connections of the prospective juror and such other facts concerning him as counsel or client may desire, and in no case should the jury be informed either directly or indirectly of the employed assistance.

Other errors are relied on in the motion for a new trial, each of which we regard as wholly immaterial, but the ones in rejecting the testimony offered by plaintiff and in admitting that offered by defendant, hereinbefore referred to and discussed, are, according to our view sufficiently prejudicial to plaintiff's rights as to authorize a new trial.

Wherefore, the judgment is reversed with directions to grant plaintiff a new trial and for proceedings consistent herewith.