## Marr v. Lawson.

March 27, 1942.

C. E. Rankin for appellant.

Errol W. Draffen for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to December 12, 1938, the appellee and defendant below, Goodloe Lawson, and his brother, Clyde Lawson, owned the tract of land in Mercer County involved in this action which was supposed to contain anywhere between 237½ and 254.8585 acres. They appear to have also owned other tracts (or defendant owned them alone) some of which adjoined the larger tract involved herein. On or near to September 1, 1938, the tract here involved, and some of the other smaller ones adjoining or located near to it, were advertised by the owner or owners to be sold on the premises at public auction—the circular advertisements containing the statement that the larger tract (the one here involved) contained 264 acres. However, it is admitted by defendant in this case that the amount so stated in the advertising circular was at least 10 acres too large. The plaintiff and appellant, John W. Marr, attended that sale and was the highest bidder for the 254-plus acre tract and also the highest bidder for another adjoining tract containing something between 95 or 100 acres; but the latter tract is not involved in this litigation.

The amount of plaintiff's bid for the tract here involved was $15,801.22, which was at the rate of $62 per acre, although no price, or the amount of any bid, was stated in the deed later executed by defendant and his brother to plaintiff on December 12, 1938—the sale hav-

ing been held somewhere near September 1 of the same year. Neither does there appear to have been any writing executed at the time of the sale, and the first written evidence of it, so far as the record discloses, was the deed by which the tract was conveyed to plaintiff. Plaintiff took possession of the tract after obtaining his deed, and to some extent before then, by procuring a wheat crop to be sown thereon, making some repairs, and the transaction of other matters as owner.

On March 22, 1940, plaintiff filed this action (styled "Petition in Equity") in the Mercer Circuit Court against defendant to recover of him $1,070.02 with interest from January 1, 1939—from which date complete possession was given plaintiff by defendant—upon the ground that the tract purchased by plaintiff as containing 254-plus acres actually contained only 237½ acres, as he contended, or a shortage of 17¼ acres, which at the price per acre alleged to have been agreed upon made the amount sued for. He then alleged that since he had purchased the land "by the acre" he had the right to recover for the deficit, although not amounting to 10% of the total cost price necessary to recovery under our adopted rule where lump sales of land are made. The answer denied the material averments of the petition. The court transferred the issues to the ordinary docket over plaintiff's objections and exceptions and upon trial before a jury it returned a verdict in favor of defendant which the court approved by overruling plaintiff's motion for a new trial and dismissing his petition, to reverse which he prosecutes this appeal.

The first question to receive our attention is one of practice which learned counsel for plaintiff vigorously presents and argues with much confidence; and which is, that the court erred in transferring the only issues in the case (which are purely factual ones) to the ordinary docket for trial by jury. In making that contention counsel of course discusses Sections 6, 10 and 12 of our Civil Code of Practice and interprets them as forbidding and rendering erroneous the transfer made in this case, and for which alone the judgment should be reversed. The alleged sustaining cases cited and relied on by counsel are Higdon v. Wayne County Security Company, 154 Ky. 337, 157 S. W. 708; Gray v. Grimm, 157 Ky. 603, 163 S. W. 762; Schweitzer's Trustee v. Schweitzer, 237 Ky. 159, 35 S. W. (2d) 3; and Transylvania University v.

McDonald's Executor, 277 Ky. 608, 126 S. W. (2d) 1117. In refuting such interpretation counsel for defendant cite the cases of Hill v. Phillips' Administrator, 87 Ky. 169, 7 S. W. 917; Wisdom v. Nichols & Shepherd Company, 139 Ky. 506, 97 S. W. 18; Wallace et al. v. Friend, 49 S. W. 181, 20 Ky. Law Rep. 1270; Bush v. Eastern Kentucky Timber & Lumber Company, 90 S. W. 547, 20 Ky. Law Rep. 773; Walton Brick Company v. Anderson Foundry & Machine Works, 142 Ky. 274, 134 S. W. 136; Baxter v. Knox, 31 S. W. 284, 17 Ky. Law Rep. 489; Small v. Reeves, 104 Ky. 289, 46 S. W. 726; Castleman v. Continental Car Co., 201 Ky. 770, 258 S. W. 658; Morawick et al. v. Martineck's Guardian, 128 Ky. 155, 107 S. W. 759; and Bell v. Duncan, 196 Ky. 574, 245 S. W. 141. He also discusses those cited by plaintiff's counsel and successfully, as we conclude, shows that they do not sustain the theory of plaintiff's counsel—at least to the extent that the complained of order of the court in this case was sufficiently erroneous (if at all) to authorize a reversal of the judgment.

To begin with, the case—although styled as a "Petition in Equity"—is in fact only an ordinary action to recover for alleged deceit, fraud or misrepresentation by which plaintiff paid to defendant the excess amount sought to be recovered by the petition. The cause of action rests upon an implied promise to return to the payor by the payee the excess amount paid as being without consideration and contrary to the contract made by the parties under which the payment was made. The contract related to the purchase of realty which, as alleged, was "by the acre" which, if true, the shortage in the acreage (usually referred to as a deficiency) gives the purchaser the right to maintain the action to recover therefor. But the action is, nevertheless, an ordinary one for the recovery of money—not involving any equitable issues, such as rescission, or reformation, or any other equitable relief, although the cause of action may have grown out of fraud, mistake or misrepresentation.

We will not undertake to analyze the cases relied on by attorneys for the respective litigants, since it would require this opinion to be not only excessively long, but would not materially contribute more to the reader than what he might obtain by consulting the opinions themselves. Suffice it to say that Subsection 3 of Section 10 of our Civil Code of Practice prescribes that

"the court may, without motion, order the transfer of an action from one docket to another if either party be entitled to such transfer; or may try the action, or render judgment therein by default, unless a party entitled to a transfer move therefor." The court appears to have exercised that authority in this case and we have been unable to find any domestic case denying its right to do so. Having disposed of the preliminary question of practice we will now briefly turn our attention to the merits of the case.

We have said that the issues were purely factual, to be determined on the evidence adduced at the trial. We have also seen that the deed executed by defendant to plaintiff stated no price per acre. It said that the conveyance was made "in consideration of One Dollar and other good and valuable consideration," which were expressly acknowledged. It then described the tract of land conveyed and closed with the habendum clause. Therefore on the face of the deed the sale appears to be one of a purchase in gross and not by the acre. However, it appears to be competent for the parties to prove, by parol testimony, the true transaction and to enforce their rights in accordance therewith. The fact, however, that the deed does not disclose a sale by the acre casts the burden on plaintiff to prove that the sale was made in that manner. He so testified and defendant diametrically contradicted him.

It developed, as testified to by plaintiff, that after he had been declared to be the successful bidder at the auction sale—occurring somewhere near September 1, 1938—and before he obtained his deed, he procured an engineering student of the University of Kentucky to go upon the land and view it and to calculate the number of acres therein as contained in some source of the title that plaintiff had seen or was acquainted with. At any rate, that person reported that the description furnished him contained slightly more than the number of acres for which plaintiff finally settled at $62 per acre. In other words, if the report of that student was correct, plaintiff was the recipient of more land than the amount he paid for. It is conceded that plaintiff had the right to ask for and obtain a survey of the land before accepting a deed to it from defendant and paying the consideration therefor, and which defendant agreed to cause to be made whenever notified; but plaintiff testified that no such

notification was ever given, and which appears not to be denied by plaintiff. Each of them says that no one was present during any conversation touching the negotiations for the deed or any matter appertaining to the transaction.

In the meantime—and for some months prior to the execution of the deed—plaintiff learned that defendant's father in 1927 had borrowed from an insurance company $5,000 and executed a mortgage on the tract of land to secure it. The agent of the insurance company who participated in that transaction was named King, and he resided in Harrodsburg. Plaintiff visited him and learned where he might find the abstract, or copy thereof—and which of course contained the survey and acreage in the involved tract. The attorney who appears to have made that abstract was the one now representing plaintiff. Either from him or some other source plaintiff got possession of the information that such papers contained, and the matter was later discussed by him and defendant. Plaintiff admitted his procurement of that information through the man King, but says that defendant first informed him of the facts of the existence of such documents, and he represented to him that the survey made at the time the borrowing transaction was made was a correct one. However, that statement is positively denied by defendant who says in his testimony: "He came over here and told me he had been to Mr. King's office and checked up on the farm—he said he went in there to see about getting a loan on the farm. He said he told Mr. King he wanted to get a loan, and that Mr. King said he believed that he had had a loan on that farm before." He continued in his testimony by saying that he at that time informed plaintiff that he (defendant) was ready to survey the farm if plaintiff required it, and that the latter replied that "he would let me know about it." Further along in his testimony, in testifying upon the same issue, defendant stated:

"A * * * He (plaintiff) said—on the big place— I have checked the records and I think the land is all there. He said—I am willing to risk it if you are willing to risk it. I said—what do you mean by risking it. He said—I will bind myself to take the place if you will bind yourself if there is more land there you will lose it. I said—good enough—I will make the deed.

"Q. Was there anything said about long and short.

A. If it was short he would take it—if it was long I would lose it.

"Q. Tell the jury whether or not you agreed to those terms? A. Yes, I told him I would do that—I would make the deed and put that in the deed." That testimony was denied by plaintiff.

We are utterly unable, as we have stated, to appraise the case as presenting but one issue of fact and which is—whether or not the purchase transaction as made and understood by the parties was one in gross, and one of that type and character designated in the law as a "chance bargain," i. e., an entering into the contract for better or worse accompanied with the taking of chances as to the true facts and situation of the thing or article bargained about? Such contracts are recognized in the law and have not been denounced by this court, but on the contrary they are upheld and enforced when the facts show such a bargain to exist, as will be seen by the cases referred to in Volume 1 of Caldwell's Kentucky Judicial Dictionary on page 485. One of the cases cited by the author of that work is Williford v. Bentley, 5 J. J. Marsh. 181, and which is a case involving facts practically, if not completely, analogous to those involved in this case. In that case the involved deed was executed pursuant to an old survey of the conveyed land, the same as was done in this case. It is true that in that case the plaintiff who sought to recover for the deficiency did not allege fraud or mistake in executing the deed; but the opinion also recites that "none is shown to exist," even if such allegations had been made, and which is likewise true in this case. In deciding the rights of the parties—which of course involved the interpretation of the nature of the transaction—the court by Judge Underwood said: "If there were eleven acres more than the quantity called for, we are of opinion the complainant would be entitled to it, without paying therefor; as the quantity is deficient, he must lose it, having converted a contract by the acre into a risking bargain; the cases of Young v. Craig, 2 Bibb [270], 272, and Rogers v. Garnett, 4 T. B. Mon. 269, are decisive of the present controversy." That case, as will be seen, is one where the original transaction (and which is contended by plaintiff in this case) was undoubtedly a purchase of the tract by the acre, but it was later, by mutual agreement of the parties, converted into a "chance bargain" by which

each party accepted the named acreage as being correct and to take the chance of the vendee obtaining any excess quantity of land than that described in the deed or losing any deficiency in that described acreage. See also the text in 66 Corpus Juris, p. 659, Section 215.

Another opinion of this court substantiates the doctrine announced in the Williford opinion is Rogers v. Garnett, 4 T. B. Mon. 269. Similar facts were involved in that case to those appearing in this one and also to those involved in the Williford case. Quite a large tract of land was involved in that (Rogers) case and there was an excess of 283 acres; but the deed having been made and executed as a risk or chance bargain, the court declined to grant relief because, as stated in the opinion: "When the parties met upon the lands with a view to the execution of their agreement, they were as competent to obviate any difficulties or inconveniences which arose, by a new agreement, or modification of their former agreement, as they were to execute the letter of the old contract. The execution of the contract about which they met on the lands, required an assent of both parties, as to the mode of taking and defining the 2,000 acres. To fix and adjust the boundaries to be expressed in the deed by mutual agreement and assent, was the design of their meeting. The complainant is seeking relief against his deed, upon an equity alleged. The defendant is seeking no relief, no aid, no specific execution, but to rebut an equity claimed, he relies upon another agreement, not executory, but executed." Compare, also, the case of Chilton v. Head, 193 Ky. 768, 237 S. W. 422. In that case the vendee sought recovery for an excess in a sale in gross of more than 10%, but we directed the dismissal of his petition upon the ground that the bargain by which the sale was made was a chance one which the parties agreed should be such, and it being competent for them to enter into such an agreement they should be made to abide by it. See, also, as relating to the questions involved in this case—including the introduction of parol testimony to show the true transaction etc.—the text in 27 R. C. L., pages 432, 433, Section 146; pages 436, 437, Sections 150, 151; and page 440, Section 153; the latter of which deals more particularly with the situation presented by this record.

Because of our acquaintance with respective counsel in this case, and knowing that they uprightly pursue

350

their profession as attorneys, but with loyalty to their clients, and because of them differing so radically as to the questions involved, we have given this case, perhaps, more than ordinary consideration, and which was done largely because learned counsel for plaintiff appeared to be so confident in the righteousness of his client's cause, for which no criticism can be made. But we are unable to accept his views, or his advanced theories upon which the case should be determined. On the contrary, we repeat, that the case is purely an ordinary one to recover a definite sum of money based upon the right claimed by plaintiff to have been rooted in mistake, misrepresentation or fraud—all of which was denied by the defendant, and the jury to whom the issues were committed found in the latter's favor. Under the well recognized practice we can not say that the verdict was either against the evidence or that it was returned on only a scintilla of proof, which under the recent case of Nugent v. Nugent's Executor, 281 Ky. 263, 135 S. W. (2d) 877, would authorize a peremptory instruction against the litigant whose proof created only the scintilla. Neither does the testimony produce in our minds anything more than a doubt (if even that much) as to the correctness of the findings of fact which the court accepted and rendered its judgment thereon. Therefore, if the case should by any interpretation be considered as one where the verdict of the jury was only advisory to the chancellor we would not be authorized to disturb it.

Wherefore for the reasons stated the judgment is affirmed.